## No. 15,556.

### Paulino *v.* The People
(155 P. [2d] 609)

Decided January 15, 1945.

Mr. Don B. Oliver, for plaintiff in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. James S. Henderson, Assistant, for the people.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as defendant, was convicted on both counts of an information. The first charged keeping a gambling house in violation of section 229, chapter 48, '35 C.S.A. The second charged keeping gambling devices in violation of section 230, id. To review the judgment of fine and jail sentence entered on the verdicts he prosecutes this writ. The errors assigned are the admission of certain articles in evidence, the overruling of his motion for a directed verdict and the refusal to give his tendered instruction to the same effect. These raise only the questions of the propriety of the admission of the questioned articles and the sufficiency of the evidence to support the verdict.

1. When defendant was "booked" at the county jail he was relieved of certain cash, dice, and some papers containing figures, and these were admitted in evidence over his protest. He made no objection when the articles were taken, claimed no privilege and did not seek their recovery. His assignment is without merit. *United States v. Hoyt,* 53 F. (2d) 881; *Massantonio v. People,* 77 Colo. 392, 236 Pac. 1019; *Imboden v. People,* 40 Colo. 142, 180, 90 Pac. 608; *Roberts v. People,* 78 Colo. 555, 243 Pac. 544; 16 C. J., p. 567, §1098.

2. Defendant insists there was no proof of the corpus delicti and no evidence to support the verdict. Let us see.

The sheriff and his posse went to an isolated cabin or shack in the late evening. This building was about 12 by 20 feet surrounded by a fence or stockade 30 by 40 feet and approximately nine feet high. Flood lights were focused on the gate and some automobiles were parked there-abouts. Through a hole broken in the wallboard a person on the inside could keep watch on the entrance. Through a window the invaders were able to inspect the interior. Approximately a dozen men

were gathered about a table, some with money in their hands and there was money on the table. The men were "shooting dice." The sheriff made an alarm at the gate where one Mike Falbo, who knew him, was on guard. Falbo promptly shouted the sheriff's name and forbade him entering. He entered notwithstanding. The players scattered and fled. Some attempted to scale the stockade and succeeded, others failed. All were "rounded up" and their names and addresses taken. When the alarm was given some one swept the equipment of the table into a cigar box and secreted it in the oven of a stove. From thence it was recovered and found to contain a deck of cards, a dice box, approximately a dozen dice and some 200 poker chips. One silver dollar still reposed on the table. In the room, aside from the table and stove above mentioned, there was another table, a large chair, a couch, a dice rake and some stools. Nothing more, and the floor was bare.

The foregoing presents no picture of a possible farmer's residence, a shop, a hospital, a library, or any conceivable establishment save a gambling house. Neither is the conclusion possible that this was self-established and operated. Such places do not "just grow." Some one brings them into existence and while they remain some one, of necessity, "keeps" and operates them. Hence we have here a gambling house with gambling paraphernalia kept and operated by some person or persons. A perfect corpus delicti, without regard to any confession or admission by defendants. Wharton's Crim. Ev., vol. 2 (10th ed.), §633.

The sole remaining question is, Who was the keeper? Defendant did not take the stand nor was any evidence in his behalf introduced. However, the record contains his uncontradicted statement of the character of the place, the gambling therein, and his responsibility therefor.

When the place was entered defendant was apparently the only one not playing. He was promptly arrested and

taken to jail at the county seat. On the way he inquired of the officers if it was the intention to "let the big gamblers run." He threatened that he would "have them all into it," mentioning in particular one "Tex Wilson." The money found on his person was contained in a canvas bag and was all in coin, including sixteen silver dollars. The following afternoon he told the sheriff that at the time of the raid he was running the game; that he was employed for the purpose at $60 per week by Tex Wilson in whose service he had been for five months; that the game being played was a dice game, "an awful fast game," in which the players each paid one dollar per hour for the privilege; that the minimum bet permitted was one dollar and that Adams county men were barred from the game. All this was entirely voluntary, without the slightest hint of compulsion, inducement or pressure.

Once the corpus delicti is established, defendant's connection as the criminal agent may be shown by extrajudicial confessions and this will support a verdict against him. *Roberts v. People*, 11 Colo. 213, 216; 17 Pac. 637.

Evidence of defendant's guilt was therefore overwhelming and undisputed.

The judgment is affirmed.

MR. CHIEF JUSTICE BAKKE and MR. JUSTICE ALTER concur.