No. 25327

**The People of the State of Colorado v.
Joseph Dick "Scotty" Spinuzzi**
(520 P.2d 1043)

Decided April 8, 1974.                    Rehearing denied April 29, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, E. Ronald Beeks, Assistant, for plaintiff-appellee.

MacDonald & Fattor, James Fattor, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant-appellant, Joseph Dick Spinuzzi, was charged with keeping a gaming room in violation of C.R.S. 1963, 40-10-7 and with keeping a gaming table in violation of C.R.S. 1963, 40-10-8. He was tried and convicted on both counts by a jury.[1]

Spinuzzi seeks reversal here on three grounds, *i.e.,* (1) insufficiency of the evidence, (2) an erroneous instruction, and (3) the inadmissibility of a conversation between the defendant and a police officer which occurred subsequent to the filing of the charges. Our review of the record leads us to conclude that defendant's allegations of error are without merit, and that the judgments of conviction must be sustained.

---

[1] Defendant was tried together with fifteen other persons who were charged with gambling offenses growing out of the operative facts of this case. All were convicted.

The evidence discloses the following facts bearing directly on the two charges.

Spinuzzi rented a small house located at 2514 Santa Fe Drive, Pueblo County. Photographs of the interior of the house, together with the testimony of police officers, show the house contained a dice or crap table, two felt covered card tables, and several chairs and stools. There were neither wall hangings nor floor covering. The windows in the house had been boarded up, painted or otherwise covered.

The kitchen was equipped with a stove, refrigerator and a cupboard. On the stove was a coffee pot and a can of coffee. There was more coffee in the cupboard. The refrigerator was filled with cans of beer and soft drinks. The cupboard was filled with seven cartons of cigarettes plus 71 packages of assorted brands of cigarettes, boxes of cigars, 23 decks of playing cards, a box of poker chips, a money bag and a fruit can containing $34 in United States paper currency and $4.50 in coins. Four dice and a dice cup were also seized within the house.

As observed by Mr. Justice Burke in *Paulino v. People,* 113 Colo. 180, 155 P.2d 609 (1945),

"The foregoing presents no picture of a possible farmer's residence, a shop, a hospital, a library, or any conceivable establishment save a gambling house."

In addition, the evidence connecting appellant with the gambling operation showed that Spinuzzi had had the utilities connected and that he paid the rent. All of these payments were made in cash. Additionally, the house had been under surveillance for five months prior to the execution of a search warrant. Spinuzzi, as well as other known gamblers, were seen entering and leaving the house through the rear door many times during this period.

At the time of the raid, 15 known gamblers were arrested in the house. Prior to the entry, the police officers looked through a peep hole in the front door and saw several of Spinuzzi's co-defendants shooting dice at the dice table. When the officers knocked on the door, announced that they were police officers and demanded entrance, the individuals

standing around the dice table were observed picking up money from the table and stuffing it in their pockets. As the result of the searches made incident to the several arrests, currency in varying amounts up to $941 was seized from the several co-defendants.

## I.

■ From the foregoing evidence the jury was warranted in concluding that Spinuzzi was keeping the building "to be used or occupied for gambling" and that he "knowingly permit[ed] the same to be used or occupied for gambling" in violation of C.R.S. 1963, 40-10-7. *Wolfe v. People,* 90 Colo. 102, 6 P.2d 927 (1931). The same evidence supports the conviction for violation of C.R.S. 1963, 40-10-8, which makes it a misdemeanor for any person to

". . . keep or exhibit any gaming table, establishment, device or apparatus to win or gain money or other property, or shall aid, assist or permit others to do the same, . . ."

The evidence connecting the defendant in this case to gambling activities is stronger than it was in *Wolfe,* where the defendant was convicted of violations of the same two statutes.

## II.

The defendant summarized his second argument thusly:

"Instruction No. 9 was an abstract and misleading statement of the law, and it obscured the necessary element of knowledge, and was therefore erroneous."

■ At the conclusion of the evidence when the court and counsel were settling the instructions, there was no specific objection to Instruction No. 9 by defendant's counsel. There was, however, a general objection to all instructions on the ground that the case should not be submitted to the jury at all; that the defendant's motion for judgment of acquittal, because of the insufficiency of the evidence, should have been granted. In his motion for new trial the defendant alleged error "in the giving of Instruction No. 9 since said instruction was otherwise covered by other instructions."

From our review of all instructions, we are satisfied that there was no "plain error" in the giving of the instruction

which the defendant challenges for the first time on appeal. Crim. P. 52(b). This being true, we see no need to discuss the several arguments advanced by the defendant in view of Crim. P. 30, which, so far as material, states:

". . . All instructions shall be submitted to the parties, who shall make all objections thereto before they are given to the jury. *Only the grounds so specified shall be considered on motion for new trial or on review.* . . ." (Emphasis added.)

*See Morehead v. People,* 167 Colo. 287, 447 P.2d 215 (1968); *Roybal v. People,* 166 Colo. 541, 444 P.2d 875 (1968).

## III.

The last assignment of error is grounded on the admission of a conversation between a police officer and the defendant at 2514 Santa Fe Drive approximately one week after the raid which resulted in the charges. It is not clear from the record whether the charges had been filed at the time of the brief encounter out of which the conversation arose. For the purpose of our discussion, we will assume that the information had been filed prior to the conversation.

The witness and other police officers went to the property to determine whether it was still being used for gambling activities necessitating further surveillance. When the officers arrived, Spinuzzi was standing by the rear door to the house. The witness approached the defendant and the following conversation occurred:

"I asked him what he was doing and he stated he was looking at the door. I then asked him what for and his answer was 'so it will be harder for you bastards to get in next time.' "

The defendant contends that the statement was obtained in violation of his Fifth and Sixth Amendment rights, citing *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

The defendant, however, did not regard the error as sufficiently grievous to assign it as error in his motion for new trial. Ordinarily we would not consider it for that reason alone. But, because of the constitutional dimensions of the issue, we will look to the merits of the argument.

In *Massiah,* after the defendant was indicted, had retained a lawyer, and had been released on bail, a federal agent succeeded by surreptitious means in listening to incriminating statements elicited from him. The statements were made to a co-defendant, supposedly in private, but by pre-arrangement between the agent and the co-defendant, the agent was able to electronically monitor the conversation. The United States Supreme Court held that this deliberate (though surreptitious) post-indictment interrogation should have been conducted in the presence of the defendant's retained counsel.

Defendant's reliance on *Massiah* is misplaced. There was nothing surreptitious in the instant circumstances. The officers were not seeking evidence of the crimes charged, but were attempting to determine whether the house was still being used for gambling purposes. Their meeting the defendant there was coincidental. Nor was there police interrogation here. The officers were not asking questions designed to connect him with the offenses with which he was charged. The defendant's statement was a voluntary off-hand remark. This confrontation was not, in any sense of the term, a critical stage in the criminal proceedings pending against the defendant where he must be afforded the presence of counsel. *See Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON do not participate.