No. 22459.

PORFIRIO ALBERT ROYBAL *v.* THE PEOPLE OF THE STATE OF COLORADO.
(444 P.2d 875)

Decided September 9, 1968.

Joseph R. Marranzino, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Paul D. Rubner, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Kelley.

Roybal is here on a writ of error challenging his conviction for possession of cannabis, commonly known as marijuana, in violation of C.R.S. '53, 48-6-2, and C.R.S. '53, 48-6-20 (third offense). He was sentenced to the Colorado penitentiary for a period of not less than seven years nor more than ten years.

Three grounds for reversal are assigned by Roybal. Two of the assignments relate to the denial of his motion to suppress evidence on the basis of unlawful search and seizure, and the third relates to an instruction given by the court subsequent to the submission of the case to the jury. The two search and seizure questions will be considered under part I and the instruction question under part II.

I.

Roybal's conviction is based in part upon marijuana found under the front seat of the automobile which he was driving immediately prior to his arrest for driving

a motor vehicle while his operator's license was suspended; and in part upon fragments of marijuana recovered from his clothing in the course of a routine investigation which occurred immediately after his arrival at the police station.

Roybal, prior to trial, moved to suppress the evidence on the ground that both seizures violated his rights under Article II, Section 7 of the constitution of the State of Colorado, and under the Fourth Amendment of the United States Constitution. The trial court denied the motion. The validity of the searches and seizures was again raised when the evidence was offered at the trial. The court overruled the objection. The alleged errors were preserved for our consideration in the motion for new trial.

The facts as developed in the hearing on the motion to suppress are not in controversy.

Two Denver police officers, Tate and Reiber, were assigned to the "task force," which is described as a "unit instituted by the former chief as a crime suppression measure," which operated within specific areas of the city.

About 9:30 o'clock p.m., May 7, 1963, the officers were seated in their parked cruiser near the intersection of Twentieth Street and Washington Avenue in the city of Denver. The cruiser was headed south on Washington Street, a one-way street south. At this time a car driven by a man, accompanied by a woman passenger seated next to him, passed the cruiser. Officer Tate recognized the driver of the car as Roybal, whom he knew to be a person who had had his operator's license suspended. Tate further observed that the right taillight on the car was broken and in violation of the municipal code.

The police cruiser followed the Roybal car for about two blocks before sounding its siren. When the siren was turned on, the woman passenger, Inez Moya, leaned forward so that she was almost out of view of officer

Tate. By the time the Roybal car came to a stop, Moya had resumed her upright position.

Tate proceeded to the driver's side of Roybal's car and asked Roybal if he was aware that his right taillight was broken. Roybal replied in the affirmative. Tate then asked to see his operator's license. Roybal answered that he had left it at home. Tate then testified: "I replied to Mr. Roybal that this was not true, because I knew Mr. Roybal was driving under suspension. I told Mr. Roybal at that time that he was going to jail. I then called Mr. Roybal back to the police car. I asked Mr. Roybal, knowing of his past associations, that he — I asked him if the car was clean, and he said, 'Yes.' I said, 'do you mind if I look at it?' I received no answer from Mr. Roybal. I looked through the car. I found under the driver's side a paper sack, containing three small plastic sacks of a green weed-like material."

In further reference to his past knowledge of the defendant, Tate testified that he did not know Roybal personally but that he did know him "in relation to his previous narcotics run-ins"; that he was not familiar with the "particular cases," but that he "knew that his associations were of this nature." On cross-examination, officer Tate was asked this question: "Now I believe you testified on direct examination that you have within your personal knowledge that the defendant was previously engaged in possible traffic of narcotics, is that right?" "A. Yes, sir." And when asked where he obtained this information, he answered:

"This information was furnished by a pamphlet that is put out by the Intelligence Bureau on either a monthly or quarterly basis that lists the property recovered by the Intelligence Bureau; the parties arrested; the date of their arrest and what was in their possession at that time. Photographs are also furnished to the task force of all parties appearing on the list of previous arrests."

The defendant concedes that his arrest for a violation of the state motor vehicle code was valid, but

contends that the search was not incident to the arrest. Roybal relies upon *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996, and in particular the language which says, in effect, that in a search incident to a lawful arrest, the officers must be looking for specific articles and must not be conducting a general exploratory search. *Hernandez* is still the law.

■ However, this is not *Hernandez.* Each case must be tested on its own particular facts and the test is always whether the search was reasonable under the circumstances. *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

■ In *Baca v. People,* 160 Colo. 477, 418 P.2d 182, we reaffirmed the proposition that an officer conducting a reasonable search, either under a valid search warrant or incident to a valid arrest, who uncovers contraband or articles the possession of which is a crime, may seize those articles even though they may not relate to the crime for which the arrest was made.

■ Also in *Baca* we adopted the following statement from *Charles v. United States,* 9 Cir., 278 F.2d 386: "Modern police practice calls for a thorough search at the station-house of any person who is taken into custody as well as the 'frisking' which takes place at the moment of arrest. * * * Such searches are not unreasonable; they are an integral part of efficient police procedure."
The only question, therefore, is whether or not the search of the car was reasonable under the circumstances here.

■ In determining reasonableness, it is necessary to balance the public need to search against the invasion of the defendant's person or property which the search entails. *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. We arrive at the answer to our problem by looking to specific and articulable facts and the rational inferences to be drawn from those facts.

■ These facts include: the knowledge of the police

officer that he was a convicted felon; association with undesirable characters and other known felons; that Moya leaned forward, assuming a position in which she could readily have put something under the front seat; and that Roybal, when asked if he was "clean," replied "yes," but when asked if the car was "clean," did not respond.

It is reasonable to infer that a police officer of several years' experience would rationally infer that a known felon might be carrying a weapon, that since a patting down of the outer clothing of the defendant did not reveal a weapon, there was a probability that there was one in the car, particularly since the defendant stood silent when asked if the car was "clean" and having responded affirmatively when asked about his clothing.

■ An arresting officer has an incidental right to make a contemporaneous search of the person arrested and of things under his control, for weapons by which his escape might be effected or the officer's safety or life endangered. *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236; *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; *State of Utah v. Chestnut,* 20 Utah 2d 268, 437 P.2d 197; *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

■ When in the course of a valid search an arresting officer finds property, the possession of which is illegal, he may seize it regardless of the fact that the arrest was for an entirely different offense. *Hernandez v. People, supra; Casias v. People,* 160 Colo. 152, 415 P.2d 344; *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

■ We hold that the arrest was valid and that probable cause existed which justified the searches and seizures under attack here.

## II.

■ Roybal asserts error in the giving of Instruction No. 10A defining "to possess" and "possession." The jury

during its deliberations requested the court "for legal clarification or instruction as to what constitutes possession * * *." Instruction No. 10A was given in compliance with this request.

The defendant, his counsel, and the district attorney were present in the courtroom at the time of the request and during the court's instruction to the jury. No contemporaneous objection was made to the giving of the instruction or to its correctness as a statement of the law.

The defendant raised the issue for the first time in his motion for new trial, claiming that the procedure prevented him from arguing the effect of the instruction to the jury. The objection was raised too late for consideration by the trial court and, consequently, by this court.

The rule is that grounds urged in a motion for new trial or on writ of error must ordinarily be preserved at the trial by timely and sufficient objections. The rule applies to jury instructions. Colo. R. Crim. P. 30. *Marshall v. People,* 160 Colo. 323, 417 P.2d 491; *Rhodus v. People,* 158 Colo. 264, 406 P.2d 679; *Zeiler v. People,* 157 Colo. 332, 403 P.2d 439. There is nothing in the circumstances of this case to bring it within any exception to the general rule.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE HODGES concur.