## No. 79SA345

### The People of the State of Colorado v. Robert David Barndt

(604 P.2d 1173)

Decided January 7, 1980.

52

Robert L. Russel, District Attorney, John W. Suthers, Deputy, for plaintiff-appellant.

Simons & Iuppa, Barney Iuppa, Jr., for defendant-appellee.

*En Banc.*

JUSTICE GROVES delivered the opinion of the Court.

The People bring this interlocutory appeal from an order by the El Paso County District Court suppressing evidence seized in connection with the defendant's arrest for possession and sale of narcotics and dangerous drugs. The trial court ruled that a prior unlawful search of the defendant's house by police officers had tainted the later seizure with illegality and that the conduct was severe enough to require suppression of the seized evidence, even though the later seizure had been pursuant to a warrant. We affirm the ruling in part and reverse the ruling in part.

Testimony at the suppression hearing revealed the following facts. The seizure of the evidence resulted from three drug purchases made by a Colorado Springs police officer working undercover. The seller was Rourk Rock Reisfelt, who was initially a co-defendant with defendant Robert David Barndt, but whose case was later severed from this action. Reisfelt twice sold suspected hashish and once suspected cocaine to the undercover agent. The transactions followed a pattern: the police officer would drive Reisfelt to the block on which the defendant lived; Reisfelt would go into the defendant's house and come out with the contraband; he would then sell it to the officer. Reisfelt was arrested after the third transaction. He cooperated with the police, waived his *Miranda* rights, and told them that he had purchased the contraband from a man named "Bob", whom he

described and who, he said, lived alone, and was presently alone, in the house which he had just left after obtaining the drugs for sale to the officers.

Two undercover officers approached the house, knocked on the door, and were greeted by the defendant, who matched Reisfelt's description of Bob. During the initial, brief conversation, the defendant remained behind a closed screen door. After showing him their police credentials and guns, the officers placed him under arrest and told him to come outside the house. The defendant did so, and pulled the front door shut behind him, apparently automatically locking it. About this time members of an accompanying surveillance team of police officers came onto the porch. One officer immediately kicked open the locked door. Several officers entered the house and walked through it, looking in all the rooms and closets. The officers testified that they conducted this type of search to "secure" the house, that is, to discover any other person who might harm the officers or destroy possible evidence. They also testified that this was normal, standard procedure. While in the house they saw, but did not seize, what they suspected to be marijuana and cocaine. This is referred to as the first search.

Finding no one in the house, the officers locked the back door and positioned one officer as guard at the front of the house. The other officers took the defendant and left the house so as to obtain a search warrant.

Approximately three hours later, armed with a search warrant, officers searched the premises and seized drugs and drug paraphernalia, some of which had not been seen during the initial search. This is referred to as the second search.

The trial court concluded in its order to suppress that probable cause had existed both to arrest the defendant and to obtain the warrant to search his house. The court, however, questioned the constitutionality of both searches.[1] The court ruled that the first search was illegal for the reason that no exigent circumstances existed to justify and thereby to render reasonable the police conduct which the court concluded was constitutionally excessive. With this we agree. It further ruled that the second search was also unlawful as it was tainted by the illegality of the first search, and that the taint was not removed by the properly acquired search warrant. With this we disagree.

The trial court made the following findings with respect to the character and purpose of the first search:

"The officers claim, and the Court finds in the absence of any contradictory evidence, that they did just walk through the house and conducted a quick search consistent with the declared purpose, namely that of looking

---

[1] *U.S. Const.* amend. IV; *Colo. Const.* Art. II, Sec. 7.

only for other persons who might have been inside and that they looked only in rooms and closets large enough to house a person, and that they did not conduct a detailed search through drawers, cupboards and similar storage places. During the course of the walk they had been through, they observed various suspected drugs in plain view on a shelf in one closet, on a table top, under a table, and in a box or bag on the floor in one room."

## I.

We first address the issue of whether the first search of defendant's house was lawful.

The People contend that the circumstances surrounding the defendant's arrest for drug offenses allowed, and even required, the police to search the house for third persons who might harm officers on the premises or destroy possible evidence yet to be seized pursuant to a warrant. They claim that because of these dangers present at every drug-trafficking arrest, and because the defendant had already made an effort to conceal his house from the police by locking the door, the cursory search for third persons was more than reasonable. The People disagree with the court's assessment that the police had no reason to believe that anyone other than the defendant was in the house. They cite their lack of corroboration of Reisfelt's statement that the defendant was alone and their lack of familiarity with Reisfelt as an accurate observer.

The People also argue that past decisions of this court[2] recognizing the illegality of most warrantless evidentiary searches should be distinguished from security searches for people. They contend that because the search was merely to secure the premises and themselves from other persons, and because it was not done to observe or seize evidence, it was not unreasonable, and should not be declared unlawful.

Exigent circumstances allow immediate, warrantless searches and seizures when it reasonably appears that evidence may be removed or destroyed by a third party before it can be secured by the police. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *People v. Clark,* 37 Colo. App. 188, 547 P.2d 267 (1976); *People v. Boorem,* 184 Colo. 233, 519 P.2d 939 (1974). The defendant contends, and the trial court ruled, that the facts of this case do not substantiate such a fear on the part of the police of the presence of third persons. We agree. There were no indications of a third party who could do damage either to fellow officers or to possible evidence.

Furthermore, as the trial court noted, the police described searches such a the one here as "just normal procedure" and "standard procedure . . . to make sure there is [sic] no other persons in the

---

[2] *People v. Williams,* 192 Colo. 249, 557 P.2d 399 (1976); *People v. Hannah,* 183 Colo. 9, 514 P.2d 320 (1973).

residence." While exigent circumstances do allow warrantless searches, they are the exception, not the rule. The circumstances must be extraordinary. Mere incantation of the phrase, "exigent circumstances," will not automatically validate a warrantless search. In the instant case, it is inconsistent to describe on the one hand the search as standard procedure and then on the other hand to claim that exigent circumstances necessitated this particular search. We do not agree with the People's contention that all drug arrests give rise to exigent circumstances thereby permitting warrantless, "security" searches. The trial court correctly ruled this search illegal. As a result, all contraband discovered during that search must be suppressed.

## II.

Being of the opinion that the first search was unlawful, we must decide whether its illegality tainted the second search so as also to render it unlawful and cause the evidence discovered for the first time during the second search to be excluded under the "fruit of the poisonous tree" doctrine.[3]

The People argue that the second search and resulting seizure were lawful as they were authorized by a search warrant properly issued on the basis of probable cause established within the four corners of the affidavit, and that the affidavit did not refer to any information gained by the police officers during their first search. Therefore, the People argue, because the affidavit did not include any information from the first search, there was embodied in the warrant no "fruit" of the "poisonous tree", and hence, the evidence should not be excluded.

The People also contend that the trial court, by attempting to distinguish *People v. Hannah,* 183 Colo. 9, 514 P.2d 320 (1973), from the facts of this case, erred in ruling that the second search was illegal. They urge us not to abandon the *Hannah* rule that a search is valid if it is executed pursuant to a warrant issued on the basis of information lawfully obtained and independently sufficient to establish probable cause. In *Hannah,* as here, there had been an unlawful search of the defendant's premises, but it had been done independently by officers different from and without the knowledge of the officers who sought and obtained a valid search warrant. We there held that, because the facts and information on which the warrant was predicated did not include any information derived from the illegal search, there was no taint of illegality on the second warrant search and, therefore, the evidence seized under the search warrant should not be suppressed. We continue to adhere to *Hannah.*

---

[3] *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *People v. Orf, Jr.,* 172 Colo. 253, 472 P.2d 123 (1970).

Apparently the trial court suppressed the evidence obtained in the second search out of a concern that illegal police conduct exemplified by the first search must be deterred. We agree with the premise that such searches are not to be condoned. The exclusionary rule,[4] however, may be called upon to remedy unlawful police conduct only in appropriate circumstances.

■   The trial court found that the purpose of the illegal first search was the discovery of persons, not contraband. The search was terminated after rooms and closets large enough to house a person had been examined. Contraband was discovered during the first search because it was in plain view within such rooms and closets. Thereafter, a search warrant was obtained on the basis of information which had been obtained prior to and independent of the illegal first search. There is no suggestion in the record or in the findings of the trial court that the mere presence of contraband discovered during the illegal first search logically indicated that other contraband was to be found on the premises. As to the contraband first discovered during the second search, this is not a situation where a search warrant is sought in an effort to validate a prior illegal search and to authorize seizure of the fruits of that search. *Cf. United States v. Griffin,* 502 F.2d 959 (6th Cir. 1974), *cert denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1964); *Condon v. People,* 176 Colo. 212, 489 P.2d 1297 (1971). While there is a nexus of sorts between the two searches here in that they were conducted by some of the same officers, that fact alone is not enough to taint the second search.

Suppression of the evidence found in plain view during the illegal search is adequate to deter such searches. Neither precedent nor logic suggests any constitutional value to be protected by suppression of evidence discovered for the first time during the search conducted pursuant to the warrant. We reverse the ruling of the trial court insofar as it ordered suppression of the evidence discovered for the first time during the second search and affirm that ruling in all other respects.

JUSTICE ERICKSON and JUSTICE DUBOFSKY concur in part and dissent in part.

JUSTICE ERICKSON concurring in part and dissenting in part:

I respectfully concur in part and dissent in part for the following reasons:

Search pursuant to a warrant is the rule and, in the absence of exigent circumstances, all searches without a warrant are unlawful. *Chimel*

---

[4] *Mapp v. Ohio,* 367 U.S. 643, 91 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Wilson v. People,* 156 Colo. 243, 398 P.2d 35 (1965).

*v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1976). Here, the trial judge specifically found that there were no exigent circumstances, and I cannot join the majority in concluding that the officers' subsequent attempt to halt their search and to secure a warrant constituted a "means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). For that reason, I dissent from Part II of the majority opinion.

Testimony adduced at the suppression hearing established that prior to the defendant's arrest the police officers had the necessary probable cause to secure a search warrant.[1] *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The record also shows, however, that the officers did not secure the warrant prior to their intrusion into the defendant's premises. Rather, upon arresting the defendant, the police first searched the house, and confirmed that contraband was present. Only then did they secure the house and seek their warrant. After obtaining the warrant, the police returned to the house to seize the narcotics they had previously discovered and to conduct a more intensive search for other contraband.

The trial court made an explicit finding that there was no evidence in the record to suggest to the officers that a cohort of the defendant existed who might destroy evidence before the officers got back with a warrant. The court also concluded that the officers had no reasonable expectation that their personal safety was endangered. Accordingly, there is no justification for the conclusion that the purpose of the illegal first search was the discovery of persons, not contraband. Although the police made only a cursory search of the premises, they terminated that search after the discovery of some of the contraband sought in the warrant and then attempted to secure a warrant. The police effort to obtain a warrant after an illegal breakin cannot repair the original invasion of privacy.

In effect, the police in this case followed the same course of conduct which was condemned in *Chimel v. California, supra.* In *Chimel,* an arrest was made and a search, incident to the arrest, extended to the entire house that Chimel occupied. There, the police had facts which would have provided probable cause for the issuance of a warrant. In both this case and *Chimel* the police made their initial search without a search warrant. The search warrant, which was obtained at a later time in this case, did not, in my view, legitimize the illegal entry which was accomplished by force. The facts in this case differ only because the police obtained a warrant at a later time, and continued their search.

---

[1] One of the prosecution's main contentions, which was supported by the trial court's findings, was that the warrant that was finally issued was predicated only on information available to the police prior to the defendant's arrest.

## I.

The trial court found that the warrantless search was not constitutionally justified as incident to an arrest. Absent exigent circumstances, searches incident to lawful arrest may extend only to the area under the immediate control of the arrestee, that area in which he might gain possession of a weapon or destructible evidence. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Roybal v. People,* 166 Colo. 541, 444 P.2d 875 (1968); *People v. Casias,* 193 Colo. 66, 563 P.2d 926 (1977). A search without a warrant at another location is not incident to the arrest. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). *See also, Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). Indeed, the holding in *Vale v. Louisiana, supra,* which suppressed evidence when the police searched the defendant's house after an arrest was made on the front steps of the house, is dispositive of the issue.

The majority points out that the trial court found that no exigent circumstances justified the warrantless search. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and other cases cited in the majority opinion. The record shows that the police were informed that the defendant was alone with his Doberman Pinscher in the house that was the subject of the search. At the supression hearing, the police officers testified that because they feared the animal, they attempted to separate the defendant from his dog and eventually made the arrest on the porch where the dog was not a threat. Consequently, it is inconceivable to me that the police entered the house to protect themselves from further attack after having undergone such precautions to avoid contact with the dog. Certainly the dog was not capable of destroying narcotics, and, with the Doberman Pinscher as the only known occupant of the house, there was little danger that anyone else would enter and destroy the narcotics.

Exceptions to the warrant requirement are "jealously and carefully drawn" and there must be a strong showing "that the exigencies of the situation made the course imperative." *Coolidge v. New Hampshire,* 403 U.S. at 454-55. In my view, there is no room in either the Colorado or Federal Constitutions for the "normal" and "standard" procedure used by the officers in this case.

## II.

Once it has been established that an illegal search has taken place, and the defendant can show a nexus between the evidence sought to be suppressed and the illegal search, the burden falls squarely on the prosecution to show that the evidence is sufficiently freed from the taint of the illegality. *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed.2d 307 (1939); *Collins v. Beto,* 348 F.2d 823 (per Tuttle, C.J.) (5th

Cir. 1965). *Cf. Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In this case, the prosecution has not met that burden. I can find no constitutionally permissible way to distinguish the search activities carried out by the officers after the warrant was issued from those made by the same officers before receipt of the warrant.

The record shows that the police officers who conducted the initial illegal search had certain information at their disposal prior to the defendant's arrest, and that only this information was used in securing their subsequent search warrant. While the majority relies upon the fact that such information was derived independently of the illegal search, that fact is not dispositive. The question is whether the acquisition of the information used as the basis for the warrant was accomplished in such a way as to purge the taint created by the initial illegal search. *Cf. Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Here, the police obtained no independent information after the illegal intrusion which could be used to establish probable cause for the search warrant. Instead, all of the information relied upon for the warrant was at their disposal prior to the illegal search. Given the fact that the officers could have and should have obtained a warrant prior to the initial search, it cannot be said that the subsequent use of that prior information purged the taint.

In *United States v. Griffin,* 502 F.2d 959 (6th Cir. 1974), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974), the Sixth Circuit confronted a fact situation substantially similar to the present case. There, narcotics agents, possessing probable cause to search the defendant's apartment, dispatched one of their number to procure a search warrant while they proceeded to the defendant's apartment to secure it. The officers broke into the apartment and found a quantity of narcotics in plain view. Four hours later, a search warrant was brought to the apartment and the officers made a more thorough search. As in this case, the affidavit supporting the search warrant did not contain any facts discovered as a result of the illegal entry.

In rejecting the prosecution's claim that the taint had dissipated because the officers initially had probable cause or the warrant, the court first emphasized that there was no constitutional justification for the initial warrantless entry. 502 F.2d at 961. The court then refuted the assertion that the discovery of the narcotics was inevitable without reference to the illegal entry:

"The assertion by police (after an illegal entry and after finding evidence of crime) that the discovery was 'inevitable' because they planned to get a search warrant and had sent an officer on such a mission, would as a practical matter be beyond judicial review. Any other view would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment."

*Id.* I submit that *Griffin's* rational and holding should be applied in this case.

*Condon v. People,* 176 Colo. 212, 489 P.2d 1297 (1971), which involved facts similar to this case, also requires a result contrary to that set forth in the majority opinion. In that case officers, who had probable cause to obtain a search warrant, did not seek a warrant but instead illegally entered the defendant's house. Upon finding narcotics and apparatus for the manufacture of narcotics, the officers then applied for a search warrant. Seizure of the contraband followed.

As in *Griffin,* this Court first noted that the initial entry was illegal. We then held: "The search was illegal at its inception and nothing intervening, including the last minutes obtaining of a search warrant can render any part of the search legal." 176 Colo. at 219-20, 489 P.2d at 1301. Our holding in *Condon* cannot be reconciled with the majority's opinion in this case.[2]

### III.

In reaching its decision in this case, the majority overlooks the fundamental tenor of the exclusionary rule — its focus is forward.[3] The exclusionary rule is designed both to deter unlawful police practices by depriving them of any benefit gained from an unlawful police search, and to keep the courts from countenancing illegal search practices by the police. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Courts must strive primarily to prevent violations of the Fourth Amendment and not to repair. *Elkins,* 364 U.S. at 217.

An unavoidable implication of the majority holding is that where police suspect that contraband is present, and have probable cause necessary for the issuance of a warrant, they can first make a search to confirm their suspicions, and then obtain a warrant. If no contraband is found during

---

[2] *Condon* is not distinguishable by the facts that the officers based their affidavit for a warrant on facts discovered during the illegal search. Such a distinction is not tenable. In *Condon,* the Court noted that the officers initially had probable cause to search the premises for a decomposing body. During their warrantless search, the officers inadvertently discovered narcotics which provided the basis for the later issued warrant. To suggest that this fact alone distinguishes *Condon* from the present case would be to say that had the officers instead procured a warrant to search for a decomposing body — based on the facts available to them prior to the illegal entry — their second search and discovery of narcotics would have been constitutional. This would be sheer form over substance.

[3] *See* Traynor, *Mapp v. Ohio at Large in the Fifty States,* 1962 Duke L. J. 391, 335 (1962).

the initial search, they are free to withdraw and seek a warrant at a later time, with the warrant requirement effectively circumvented.[4]

The fact situation which is before us may be expected to occur frequently. At the suppression hearing the police officers conceded that searches such as they made in this case were standard procedure. What was not stated, however, was that such practices will continue as long as the officers feel that they can avoid the Fourth Amendment warrant requirement with impunity. Under the majority view, the police have nothing to lose by conducting these types of warrantless searches — the later determination of probable cause will render their Fourth Amendment violation irrelevant. Thus, the Fourth Amendment mandate that a neutral and detached magistrate must determine probable cause *before* an individual's privacy has been invaded is bypassed.

Such a position can not pass constitutional muster. In *United States v. Paroutian,* 299 F.2d 486, 489 (2d. Cir. 1962), the Second Circuit stated:

"Such a rule would relax the protection of the right of privacy in the very cases in which, by the government's own admission, there is no reason for an unlawful search. The better the government's case against an individual, the freer it would be to invade his privacy. We cannot accept such a result."

As one commentator put it: "If the argument was accepted that the search was valid because a warrant would subsequently be issued, the protections of the fourth amendment would be a nullity."[5] Thus, the majority opinion makes substantial inroads into rights that are protected by the Fourth Amendment.

For these reasons, I dissent from Part II of the Court's opinion, and would affirm the trial court's ruling in its entirety.

JUSTICE DUBOFSKY joins me in this concurrence and dissent.

---

[4] *Cf.* Pitler, *The Fruit of the Poisonous Tree Revisited and Shepardized,* 56 Cal. L. Rev. 579, 626-7 (1968), who discusses the situation where officers, having probable cause for an individual's arrest, break into his home and search the premises prior to his return. Upon his return, the officers make the arrest and then rediscover the evidence found earlier as part of their search incident to the arrest.

"Such a rule would discourage the procurement of search warrants and significantly encourage illicit searches prior to arrests in order to procure incriminating evidence. If the police think they have probable cause to believe that a certain individual has committed crime, then it should be a simple matter to draft a search warrant for the evidence sought to be obtained. The exclusion of evidence discovered before an arrest but seized incidental to the arrest would encourage this practice while securing the right to privacy."

[5] Note, *Inevitable Discovery: The Hypothetical Independent Source Exception to the Exclusionary Rule, 5 Hofstra L.* Rev. 137, 158 (1976).