The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

David Floyd MAGOON and Julia Marie
Magoon, Defendants-Appellants.

No. 80CA0149.

Colorado Court of Appeals,
Div. III.

Feb. 4, 1982.

Rehearing Denied Feb. 25, 1982.

Certiorari Denied May 3, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., R. Michael Mullins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Simons & Iuppa, Barney Iuppa, Jr., Colorado Springs, for defendants-appellants.

KIRSHBAUM, Judge.

Defendants, David and Julia Magoon, husband and wife, appeal their jury convictions of dispensing marijuana, possession of marijuana with intent to dispense, possession of hashish with intent to dispense, conspiracy to dispense dangerous drugs, possession of not more than one ounce of marijuana, and possession of hashish. We affirm.

The record reveals the following facts. On August 15, 1979, several Colorado Springs Police Department officers commenced an undercover drug operation. Late that morning, Officer Duarte and one Douglas Brummett discussed a purchase of ten pounds of marijuana. Brummett stated that his source had received a shipment of marijuana the previous night, and the two agreed that Duarte would remain at a shopping center parking lot while Brummett obtained the marijuana from this source. Duarte gave Brummett $4,200 in marked bills to make the purchase. Brummett then drove away from the parking lot.

Other officers followed Brummett and set up a surveillance of the residence to which he drove. They observed Brummett enter the residence and exit it a few minutes later. Brummett returned to the shopping center, and was arrested when he delivered a bag containing marijuana to Duarte. One hundred fifty dollars of the marked purchase money was discovered on Brummett's person.

While Brummett was at the residence, one officer observed defendants exit and then re-enter the house. Upon radio notification of Brummett's arrest, surveillance officers proceeded to the residence and knocked on the front door. When defendant David Magoon opened the door, one officer detected a strong odor of marijuana, entered the house, and arrested both defendants. Defendant David Magoon had $100 of the marked money on his person. A search of the house revealed a large quantity of suspected marijuana in plain view on the living room floor. A search warrant was then procured and several items were seized, including suspected contraband and the balance of the marked purchase money.

Defendants first contend that the evidence seized at the residence was the product of unconstitutional arrests and subsequent searches and hence was inadmissible. We disagree.

■ The constitutionality of an arrest is measured by probable cause. *People v. Wolf*, Colo., 635 P.2d 213 (1981). Probable cause for a warrantless arrest exists when the facts available to a reasonably cautious police officer at the moment of the arrest justify his belief that a criminal offense had been or is being committed. *People v. Vincent*, Colo., 628 P.2d 107 (1981). However, in the absence of exigent circumstances, police officers may not enter a private residence for the purpose of making a warrantless arrest without first obtaining a search warrant, even though the officers have probable cause to believe a suspect residing therein has committed a crime. *McCall v. People*, Colo., 623 P.2d 397 (1981); *People v. Coto*, 199 Colo. 508, 611 P.2d 969 (1980); *see Payton v. New York*, 445 U.S. 573, 100 S.Ct.

1371, 63 L.Ed.2d 639 (1980). The presence of exigent circumstances, such as the risk of immediate removal or destruction of evidence, permits quick police action and militates against strict adherence to the warrant requirement to gain entry into a residence. *McCall v. People, supra; People v. Barndt*, 199 Colo. 51, 604 P.2d 1173 (1980).

■ Here, the trial court found that the police had probable cause to arrest defendants. Although the trial court did not enter express findings concerning the presence of exigent circumstances, the facts are not disputed on appeal and the evidence is before us; thus, we may make a determination on this question.

■ The officers observing the premises were fully justified in pursuing their investigation of suspected criminal activities by approaching the residence and knocking on the door after notification of Brummett's arrest. *See People v. Casias*, 193 Colo. 66, 563 P.2d 926 (1977); *People v. Mangum*, 189 Colo. 246, 539 P.2d 120 (1975). As soon as they smelled marijuana emanating from the door opened by defendant David Magoon, they had probable cause to permit the immediate arrests of defendants, and exigent circumstances existed to permit their entry into the house to prevent the removal or destruction of evidence. While they may not have had probable cause to arrest or enter the premises prior to the opening of the door, *see People v. Barndt, supra*, they were not required to ignore the circumstances suddenly thrust upon them which created such probable cause. Hence, the evidence later seized pursuant to a valid search warrant was admissible at trial. *See People v. Williams*, 199 Colo. 515, 613 P.2d 879 (1980).

■ Defendants next argue that the trial court erroneously denied their motion to dismiss all counts relating to marijuana, alleging that the People failed to establish a *prima facie* case regarding the identity of the alleged contraband. We disagree.

The applicable definitions of dangerous drugs are contained in the Colorado Dangerous Drug Act, § 12–22–401 *et seq.*, C.R.

S.1973 (1978 Repl.Vol. 5). (Possession and use of "marijuana" and "hashish" are now governed by the Colorado Controlled Substance Act, § 12–22–301 *et seq.*, C.R.S.1973 (1981 Cum.Supp.), effective July 1, 1981.) Section 12–22–403(1.5), C.R.S.1973 (1978 Repl.Vol. 5), excludes the mature stalks and non-viable seeds of the marijuana plant, *Cannabis sativa L.*, from the definition of "cannabis." In prosecutions related to this dangerous drug, the prosecution must establish that the particular matter seized falls within the statutory definition of cannabis. *People v. Anzures*, 42 Colo.App. 230, 599 P.2d 921 (1979). Here, the People's expert witness stated that the contraband contained leaves of the marijuana plant in addition to stems and seeds. Because leaves are included in the definition of "cannabis," the prosecution satisfied its burden of establishing that marijuana was present in the residence.

Defendants also argue that their convictions of possession of hashish with intent to dispense must be reversed. We disagree.

Prior to and during trial defendants moved for an order requiring the People to elect between the two counts charging possession with intent to dispense dangerous drugs. Defendants argued that the statutory definitions of "hashish" and "marijuana" are indistinguishable, and that, therefore, they could not be convicted twice for possessing a single substance. On appeal, defendants also assert that the People failed to introduce any evidence to permit the jury to distinguish between the two substances. Neither argument is meritorious.

Section 12–22–403(1.5), C.R.S.1973 (1978 Repl.Vol. 5) defines "cannabis" as follows:

" '*Cannabis*' includes all parts of the plant cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin but shall not include the mature stalks of such plant, fiber produced from its stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of its mature stalks, except the resin extracted therefrom, fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."

Section 12–22–403(1.6), C.R.S.1973 (1978 Repl.Vol. 5) defines "cannabis concentrate" as follows:

" 'Cannabis concentrate' means hashish, tetrahydrocannabinois, or any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of tetrahydrocannabinois."

In § 12–22–403(13.5)(a), C.R.S.1973 (1978 Repl.Vol. 5), the General Assembly has defined the term "tetrahydrocannabinois" to include only synthetic material. The word "hashish" is not included in either the definition of cannabis or the definition of tetrahydrocannabinois.

In proscribing unlawful acts relating to dangerous drugs, the General Assembly uses the disjunctive to distinguish between cannabis and cannabis concentrate. Section 12–22–404(1)(d), C.R.S.1973 (1978 Repl.Vol. 5). Construing this statutory scheme together with the definitional provisions of § 12–22–403, C.R.S.1973 (1978 Repl. Vol. 5), we conclude that the General Assembly intended to designate two separate substances by the terms "cannabis" and "cannabis concentrate." By defining "hashish" as a synonym of cannabis concentrate, while excluding "hashish" from the definition of cannabis, the General Assembly has utilized language which sufficiently distinguishes the two substances as being separate dangerous drugs. *See State v. Floyd*, 120 Ariz. 358, 586 P.2d 203 (Ct.App. 1978), *appeal dismissed*, 440 U.S. 952, 99 S.Ct. 1487, 59 L.Ed.2d 765 (1979). The testimony of the prosecution's expert witness in this case, while less than a beacon of scientific clarification, was sufficiently illuminating to establish that two separate substances, marijuana and hashish, were seized from the defendants. This witness was not cross-examined regarding his testimony that cannabis and marijuana were synonymous, and none of his scientific opinions

were challenged by any defense witnesses. Thus, we reject defendants' arguments.

Finally, defendant David Magoon contends that the trial court erred by refusing to grant his motion for severance because his and his wife's defenses were antagonistic. We disagree.

■ A motion for severance is addressed to the sound discretion of the trial court, *People v. Horne*, Colo., 619 P.2d 53 (1980), and such ruling will not be disturbed on appeal in the absence of a showing that the denial of such motion prejudiced a defendant. *People v. Johnson*, 192 Colo. 483, 560 P.2d 465 (1977). When joint prosecution would prevent a fair trial of one or more of the defendants, however, the trial court must grant a motion for severance. *People v. Gonzales*, 198 Colo. 450, 601 P.2d 1366 (1979); *Eder v. People*, 179 Colo. 122, 498 P.2d 945 (1972).

■ Here, defendant David Magoon asserted a general denial of the charges against him. Defendant Julia Magoon, who at trial was represented by separate counsel, presented no evidence, asked no questions of any of the witnesses who testified at trial, and in closing argument merely asserted that if any offenses had been committed by her husband, he alone committed them and she should not be found guilty merely because she was his wife. The instructions informed the jury that they must give separate consideration to the case of each defendant, and the evidence was neither complex nor confusing. Under all the circumstances, we conclude that the trial court did not abuse its discretion in denying defendant David Magoon's motion for severance. *People v. Gonzales, supra.*

The judgments of conviction are affirmed.

BERMAN and KELLY, JJ., concur.