STATE OF HAWAII, Plaintiff-Appellee, *v.* WALDEMAR DOMINIC CHOY, also known as Wally D. Choy, Defendant-Appellant and DANNY DeCOSTE, Defendant

NO. 8372

(CRIMINAL NO. 55025)

MARCH 21, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant Waldemar D. Choy appeals from his conviction of the offense of Promoting a Harmful Drug in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 712-1245(1)(b) (1976).[1]

Count I of the two-count indictment[2] against defendant reads as follows:

*COUNT I:* On or about the 3d day of August, 1980, in the City and County of Honolulu, State of Hawaii, WALDEMAR DOMINIC CHOY, also known as Wally D. Choy, and DANNY W. DeCOSTE did knowingly possess

---

[1] Hawaii Revised Statutes § 712-1245(1)(b) provides:
Promoting a harmful drug in the second degree.
(1) A person commits the offense of promoting a harmful drug in the second degree if he knowingly:

\* \* \* \* \*

(b) Possesses one or more preparations, compounds, mixtures, or substances, of an aggregate weight of one-eighth ounce or more, containing one or more of the harmful drugs or one or more of the marijuana concentrates, or any combination thereof;

\* \* \* \* \*

[2] Defendant does not appeal his conviction on Count II, Promoting a Detrimental Drug in the Second Degree, HRS § 712-1248(1)(c) (1976), a misdemeanor.

one or more preparations, compounds, mixtures or substances of an aggregate weight of 1/8 ounce or more containing the marijuana concentrate hashish, thereby committing the offense of Promoting a Harmful Drug in the Second Degree in violation of Section 712-1245(1)(b) of the Hawaii Revised Statutes.

Defendant contends that the court erred in denying his motion for judgment of acquittal at the end of the government's case and attacks the verdict on the ground that the evidence was insufficient to support a finding of guilt. Defendant's third point of error raises the question whether the statutes relating to "marijuana" and "marijuana concentrate" are unconstitutionally vague. We find the defendant has waived his motion for judgment of acquittal, the verdict is supported by evidence, and the statutes are constitutionally sound.

Defendant was arrested and charged as above when he was found in possession of fourteen "tin foil-wrapped" packets containing a substance resembling "bouillion cubes" and sixteen sticks of a "leafy vegetable substance." This appeal involves only the "cubes."

During the bench trial, the prosecution's expert, Gilbert Chang (Chang), a Honolulu Police Department criminalist,[3] testified that he analyzed the vegetable substance and the contents of the tin foil packets. On direct examination, Chang testified that he analyzed the leafy vegetable substance and found it to be marijuana. He also analyzed the contents of twelve of the fourteen packets to be "marijuana in compressed form, hashish form." (T. 74-75)

On cross-examination, Chang testified he employed two different chemical tests[4] on both the vegetable matter and the

---

[3] A classification used by the American Academy of Forensic Sciences to distinguish between persons engaged in the field of analyzing criminal evidence and those engaged in other areas of study included within the Academy, such as pathologists and document specialists.

[4] "Modified Duquenois or Levine modified chemical test" and the "thin layer chromatography" test. (T. 77-78)

"cubes." The tests showed the presence of Tetrahydrocanna-binol (THC).[5] He testified that those chemical tests show the presence of THC in any substance but not the amount or percentage of THC present. They are qualitative and not quan-titative tests. One of the tests, "thin layer chromatography," is very sensitive and detects even very low levels of THC. Chang further testified that prior to running the chemical tests he examined the evidence by microscope for "cystolith hairs, cystolith granules."[6] He testified that one of the substances tested showed the presence of the granules, but the other was not recognizable, being "all crushed and compressed."[7] (T. 76-77) On re-direct examination, Chang testified that both the vegetable matter and the cubes contained THC.

At the close of the government's case, defendant moved for a judgment of acquittal on the ground that the State had not proved that defendant in fact possessed "hashish" as the indict-ment charged. The court ruled that the government had not proved possession of hashish but had proved beyond a reason-able doubt that defendant possessed the marijuana concen-trate THC. The court ruled that there was a variance between the language of the charge and the proof, but the government had proved the possession of THC and defendant was not prejudiced.

Thereafter, defendant testified that he made the cubes by mixing marijuana leaves with oregano, putting the mixture in a cloth, compressing it into a tight ball and placing it in boiling water for fifteen minutes. The mixture was allowed to dry for a

---

[5] THC is the pharmacologically active ingredient of marijuana and its derivatives, including hashish. Chun, *Marijuana: A Realistic Approach,* 2 Drug Abuse L. Rev. 1 (1972-1973). In the commentary to HRS § 712-1244, it is stated that THC was recently synthesized. *See also* Chun, *supra.*

[6] "Cystolith hairs are small hairs on the leaves resembling 'bear claws.' At the base of each hair is a cystolith or ball-like mass composed of calcium carbonate. Since hashish is the resin extracted from marihuana, there are usually no leaf fragments or cystolith hairs present in hashish samples." Note, 3 Wis. L. Rev. 727, 771 (1973).

[7] Our examination of the evidence revealed that the "leafy vegetable substance" had both leaves and other identifiable plant material while the "foil-wrapped cubes" appeared to be a brownish compressed substance.

"couple of days" and the ball was then cut into chunks. Defendant testified he thought he had made "fake hash."

Defendant presented two expert witnesses. The first, Edgar Keefer, a chemistry professor at the University of Hawaii, testified that the substance produced by defendant's method would contain THC but that it would be a lower concentration of THC than was present in the original marijuana leaves. The second witness, Mack Hagadone (Hagadone), a graduate chemist employed in a private laboratory, testified that from a chemist's standpoint "marijuana concentrate" means "a stronger and more potent material than the original." Hagadone also testified that hashish is made by extracting the oils from the plant and concentrating them.

At the close of trial, defense counsel made no motions and the court found defendant guilty of both charges on April 8, 1981.

On April 21, 1981, defendant filed a "Motion for Reconsideration of Denial of Judgment of Acquittal or for Reconsideration of Verdict and/or for New Trial." On May 20, 1981, the court entered its order denying the motion. The judgment and sentence were entered on August 14, 1981, and defendant filed a notice of appeal on August 20, 1981.

## DEFENDANT'S MOTION FOR
## JUDGMENT OF ACQUITTAL

After denial of his motion for judgment of acquittal at the end of the prosecutor's case, defendant proceeded with evidence in his defense, including his own testimony. In *State v. Halemanu,* 3 Haw. App. 300, 650 P.2d 587, *cert. denied,* ___ Haw. ___ (October 7, 1982), we held that a defendant who presents evidence after the trial court's denial of his motion for judgment of acquittal at the end of the State's case waives any error in that denial. *Cf. State v. Simpson,* 64 Haw. 363, 641 P.2d 320 (1982); *State v. Emmsley,* 3 Haw. App. 459, 652 P.2d 1148, *cert. denied,* ___ Haw. ___ (December 10 and 21, 1982). In this case, defendant has waived any such error.

However, we address defendant's argument for the reason that it is raised for the first time in this jurisdiction and in order

to give the trial courts some guidance in future cases involving similar circumstances.

Defendant argues that under the indictment the State was required to prove that the foil-wrapped substance was in fact "hashish," and that its THC content was higher than that in marijuana. Defendant also argues that the State was required to prove that the THC was synthesized and not naturally occurring.

Hashish is extracted from the resin of the flowering top of the cannabis plant. Note, 3 Wis. L. Rev. 727, 767 (1973) (hereinafter cited as Note); Uelmen, *California's New Marijuana Law,* 51 Cal. St. B. J. 27, 32 (1976). It is, in fact, sometimes used in the vernacular to mean marijuana. D. Miller, *Marihuana: The Law And Its Enforcement,* Drug Abuse L. Rev. 534, 548 (1971). Hashish is the product of the separation of the pure resin from the remainder of the plant,[8] Julien, *A Primer of Drug Action* 169 (3rd ed. 1981), and is sold in brownish cakes or blocks. Note, *supra,* at 767. It has a higher concentration of THC and estimates of its potency range from five to ten times that of marijuana. Note, *supra,* at 767; J. Kaplan, *Marijuana - The New Prohibition* 53 (1970); Chun, *Marijuana: A Realistic Approach,* 2 Drug Abuse L. Rev. 1 (1972-1973). The scientific and general communities appear to agree on the foregoing; however, we find nothing anywhere to indicate that there is agreement as to a precise potency above or below which a substance is or is not hashish.

HRS § 712-1240(7) (1976) defines "marijuana concentrate" as "hashish, tetrahydrocannabinol, or any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of tetrahydrocannabinol." The statutory scheme indicates clearly that the intent of the legislature was to treat differently the possession of marijuana concentrate and possession of the marijuana plant. *Cf. State v. Petrie,* 65 Haw. 174, 649 P.2d 381 (1982). In *Petrie,* our supreme court upheld the legislative determination that hashish poses a greater

---

[8] Purified alcoholic extract Cannabis Sativa L., deprived of its volatile oil. *The Merck Index, An Encyclopedia Of Chemical And Drugs* 602 (9th ed. 1976).

danger to society than marijuana, notwithstanding the lack of a statutory definition of the term.

The commentary following HRS § 712-1250 indicates that the concern of the legislature was that THC was obtainable independently of the marijuana plant. The thrust of the statutes is to criminalize possession of the THC in any form other than the identifiable plant. We think the lower court was correct, and it was sufficient under the indictment to prove "marijuana concentrate" by the presence of THC and the absence of identifiable parts of the marijuana plant itself. Hashish added nothing to the indictment and the State did not have to prove the substance to be in fact "hashish."[9]

As used in HRS § 712-1240(7), hashish is only a synonym of marijuana concentrate. *People v. Magoon,* 645 P.2d 286 (Colo. App. 1982).[10] The statutory definition of marijuana concentrate is purely qualitative, not quantitative and is not expressed in terms of potency. Since it is within the broad powers of the legislature, we are bound to follow that legislative definition rather than commonly accepted dictionary or scientific definitions.[11] *State v. Kantner,* 53 Haw. 327, 493 P.2d 306, *cert. denied,* 409 U.S. 948, 93 S.Ct. 287, 34 L.Ed.2d 218 (1972); *see also State v. Petrie, supra.*

Defendant's argument that the State was required to prove the presence of synthesized THC is without merit in view of the clear language of the statute defining marijuana concentrate as "natural or synthesized" THC. HRS § 712-1240(7).

---

[9] Moreover, as we view the evidence, the court could have found that the State had proved hashish, since the substances in the foil packets were in fact in cake form and contained THC.

[10] In distinguishing the substances, the Colorado statute uses the terms, "cannabis" and "cannabis concentrate."

[11] The commentary following § 712-1250 also says that hashish is "a concentrated resin extract" of marijuana. However, the commentary is only an aid in understanding the provisions of the penal code but is not evidence of legislative intent. HRS § 701-105. The primary rule in construing statutes is to ascertain and give effect to legislative intention, and the statutory language is controlling. *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 639 P.2d 1088 (1982); *In re Hawaiian Telephone Co.,* 61 Haw. 572, 608 P.2d 383 (1980).

## SUFFICIENCY OF THE EVIDENCE

Defendant argues that because his evidence shows that the concentration of THC in the cubes which he manufactured had to be lower than in marijuana, and because he thought he had made "fake hash," he did not knowingly possess a "marijuana concentrate," and the evidence, therefore, was not sufficient to support the verdict.

Where a guilty verdict is attacked on appeal, the appellate court will view the evidence in the light most favorable to the State and will sustain the verdict if it is supported by substantial evidence. *State v. Naeole,* 62 Haw. 563, 617 P.2d 820 (1980); *State v. Mata,* 1 Haw. App. 31, 613 P.2d 919 (1980). *See also State v. Bloss,* 3 Haw. App. 274, 649 P.2d 1176 (1982). Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion. It is evidence which a reasonable mind might accept as adequate to support such a conclusion. *State v. Naeole, supra.*

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the prosecution, we find that THC was present in the foil-wrapped cubes, the defendant admitted he made the cubes, and he possessed them when he was arrested. There is no evidence of any other material, chemical or vegetable, in the cubes, except THC.

The fallacy in defendant's argument is that it is based upon the assumption that the trial court had to believe his evidence as to how he made the "hash." On the contrary, the court could have rejected that evidence in its entirety. The weight and credibility of testimony is for the trial court to determine. *Molokoa Village Development Co., Ltd. v. Kauai Electric Co., Ltd.,* 60 Haw. 582, 593 P.2d 375 (1979); *State v. Carvelo,* 45 Haw. 16, 361 P.2d 45 (1961). It was as reasonable for the court to infer that the defendant in fact had obtained synthetic or natural THC and used it to make the cubes.

As we have indicated above, the presence of THC apart from any marijuana was sufficient proof of the offense charged. It is of no import that the commonly accepted connotation of "concentrate" is that of a more powerful substance, or that the scientific community so understands the term. *Cf. State v. Kantner, supra.* Defendant's argument regarding the

insufficiency of the evidence to prove a "concentrate" is without merit and, by his own admission, he "knowingly" possessed THC.

## CONSTITUTIONALITY

Defendant argues that the trial court's interpretation of the statutes regarding marijuana and marijuana concentrates renders them unconstitutionally vague. Defendant contends: (1) the statutory scheme of §§ 712-1240(6) (definition of "marijuana") and 712-1240(7) (definition of "marijuana concentrate") distinguishes between marijuana and marijuana concentrates; (2) the purpose of § 712-1245(1)(b) is to punish more severely the possession of marijuana concentrates; (3) both marijuana and the marijuana concentrates contain THC; (4) the State was required to prove that the substance possessed by the defendant was more "concentrated" or potent than marijuana; and (5) in not requiring that proof, the court made it possible to prosecute one in possession of marijuana for possessing either a harmful drug or a detrimental drug. In essence, defendant argues that the court's interpretation eliminates the distinction between the two prohibited acts, so that someone who possesses marijuana cannot know whether he is violating § 712-1245(1)(b) or § 712-1248(1)(d) and does not know whether he is committing a felony or a misdemeanor.[12]

A criminal statute must be sufficiently clear so as to give reasonable notice of prohibited conduct and to establish fixed standards for adjudging guilt. *State v. Petrie, supra; State v. Bloss,* 64 Haw. 148, 637 P.2d 1117 (1981), *cert. denied,* ___ U.S. ___, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); *State v. Johnson,* 3 Haw. App. 472, 653 P.2d 428 (1982), *cert. denied,* ___ Haw.

---

[12] It should be noted that possession of one or more preparations, compounds, mixtures, or substances of an aggregate weight of two and two-tenths pounds or more, containing any marijuana is a class C felony. HRS § 712-1247(1)(e) (1976). The distinction is only in the amounts possessed and the reasoning of this opinion would be applicable to a case involving a violation of HRS § 712-1247(1)(e).

____ (February 14, 1983). A statute which gives adequate warning of what falls under its prohibition and provides a sufficient standard for its objective and impartial application meets the requirement of due process. *Territory v. Naumu,* 43 Haw. 66 (1958); *State v. Johnson, supra.* As we have noted, the statutory distinction between marijuana and marijuana concentrate has already been upheld against an attack on vagueness grounds. *State v. Petrie, supra.*

Defendant's argument has a slightly different approach, however, from the attack made on the statute in *State v. Petrie, supra.* In *Petrie,* the defendant asserted that HRS § 712-1244(1)(d) (1976) (promoting a harmful drug in the first degree) was void for vagueness because it did not contain a scientific definition of hashish. Absent that definition, defendant further asserted that the public was not given adequate notice that a particular substance would come within the statutory definition of hashish rather than marijuana. The defendant in *Petrie* also argued that the classification of hashish as a harmful drug and marijuana as merely a detrimental drug deprived him of equal protection of the laws because the differences between the two are not of such magnitude as to justify the classification. The Hawaii Supreme Court, however, held that the statutory scheme is sufficiently clear so as to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and the classification was not improper. *Id.* 65 Haw. at 175-179, 649 P.2d at 383-385. Here the defendant argues that the lower court's statement that marijuana mixed with manure would be marijuana concentrate, together with the fact that THC is present in both marijuana and marijuana concentrate, renders the statute unconstitutionally vague.[13]

---

[13] There is some "romance" in defendant's argument. In testing a substance to determine which proscription may be applicable, four tests are primarily relied upon: macroscopic examination (identification by the morphological features of the plant material, i.e., shape of leaves, hairy leaves, odd-numbers of leaflets, shape of nuts, flowers); microscopic examination; the Duquenois-Levine test; and the thin layer chromatography test. Note, 3 Wis. L. Rev., *supra,* at 769. If upon microscopic examination cystolith hairs are found on the plant material, it is then tested for THC by the chemical tests. A positive reaction to the chemical tests indicates the plant material

We think the lower court's statement was in error. As we read the statutes, if the mixture were in such a state that any part of the plant could be identified, the mixture would be marijuana. However, if the state of the mixture, as in the case at bar, were such that examination would not disclose parts of the plant but chemical analysis disclosed presence of THC, the substance would be a marijuana concentrate.

Defendant argues, however, that since THC is also present in marijuana, one in possession of parts of the plant is also in jeopardy of being prosecuted for possession of a marijuana concentrate. We disagree. The statutes clearly distinguish between possession of any of the parts of the plant and possession of the concentrate THC. *Cf. State v. Petrie, supra.* The "harmful drug" definition includes "marijuana concentrate" but excludes "marijuana." HRS § 712-1240(2) (1976). The "detrimental drug" definition includes "marijuana." HRS § 712-1240(3) (1976). The commentary also indicates the legislature's concern was the fact that THC, isolated from the plant, poses a greater danger to society than the plant itself.

Reading the above definitions together with the definitions of marijuana, HRS § 712-1240(6), and marijuana concentrate, HRS § 712-1240(7), we hold that the prohibition relating to marijuana is clearly aimed at possession of parts of the plant itself and excludes hashish and THC. On the other hand, the prohibition against possession of the marijuana concentrate is meant to apply to possession of natural or synthetic THC when found in a state separate from identifiable parts of the plant. One who is in possession of identifiable parts of the plant, alone or mixed with other substances, can only be prosecuted for possession of marijuana, while one who possesses THC

bearing the cystolith hairs is marijuana. Even if no cystolith hairs are found, the chemical tests are used to determine if THC is present. Under the rule we adopt in this case, a positive reaction and the absence of identifiable marijuana plant material indicates a concentrate. Although the testing procedures have been criticized as not being specific, D. Fullerton and M. Kurzman, *The Identification and Misidentification of Marijuana,* Contemp. Drug Probs. 291 (Fall 1974), they are universally used and have not been successfully attacked in this jurisdiction.

separate from the plant is in possession of a harmful drug and can be prosecuted accordingly. The interpretation we adopt considers and gives effect to all parts of the statutory scheme and furthers the legislative purpose. *State v. Sylva,* 61 Haw. 385, 605 P.2d 496 (1980).

The lower court's erroneous statement that marijuana mixed with manure is a marijuana concentrate is not helpful to defendant. Where a trial court has reached the right conclusion (in this case, that defendant was in possession of a marijuana concentrate) but for the wrong reasons, its decision will not be disturbed. *Survivors of Medeiros v. Maui Land and Pineapple Co.,* 66 Haw. ___, 660 P.2d 1316 (1983); *State v. Bloss,* 3 Haw. App. 274, 649 P.2d 1176 (1982); *In re Kaohu,* 1 Haw. App. 469, 620 P.2d 1082 (1980).

Defendant's argument that the State is required to prove that the marijuana concentrate is in fact more potent or concentrated than in marijuana has been discussed above and deemed meritless.

Affirmed.

*Richard W. Pollack,* Deputy Public Defender, (*Daphne E. Barbee,* Deputy Public Defender, on the opening brief) for defendant-appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, City & County of Honolulu, for plaintiff-appellee.