547 P.2d 267 (1975)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Melvin CLARK, Defendant-Appellant.
No. 74-324.
Colorado Court of Appeals, Div. II.
December 11, 1975.
Rehearing Denied January 8, 1976.
Certiorari Denied March 15, 1976.
*269 J. D. MacFarlane, Atty. Gen., Edward G. Donovan, Sol. Gen., J. Stephen Phillips, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Davies & Saint-Veltri, Leonard E. Davies, Denver, for defendant-appellant.
Selected for Official Publication.
RULAND, Judge.
The opinion announced on August 19, 1975, is withdrawn, and the following opinion is issued in its stead.
Defendant, Melvin Clark, was tried by a jury and convicted of first degree burglary, in violation of § 18-4-202, C.R.S.1973, and rape, in violation of § 18-3-401, C.R.S. 1973. We affirm.

I. Warrantless Search
Defendant contends that the trial court erred in not granting a motion to suppress certain evidence obtained without a warrant. We disagree.
At the hearing on the motion, the following evidence was presented. At approximately 2:15 a. m. on the morning of February 18, 1974, three officers of the Greeley Police Department responded to a report that a rape had occurred at a residence located approximately one block from an apartment complex in which defendant and his brother occupied a garden level apartment.
In the course of their investigation at the residence of the prosecutrix, the investigating officers were informed by her that the perpetrator of the offense was a black male about 5'10" in height and weighing approximately 150 pounds. The officers observed two sets of footprints in freshly fallen snow, one set leading to the residence and one set leaving the residence. The officers followed each set of footprints and determined that they led by different routes to the apartment complex where defendant lived. Both sets of footprints were of similar size and the soles of the shoes creating the prints had a pattern customarily found on certain types of hiking boots.
After following the footprints to the apartment complex, the officers entered the building through the door apparently used by the individual making the tracks. A landing was located inside the door from which a person entering the apartment complex either climbed a stairway to the upstairs apartment or followed a stairway down to the garden level apartments. There was a plastic "runner" across the landing and on the stairway. The officers noted what appeared to be a dry toe print on the plastic runner on the stairway leading downstairs which indicated to them that the individual making the prints in the snow had entered the building and gone downstairs. The officers then contacted an off-duty officer who resided in the apartment complex to determine if any of the apartment residents fit the description given by the prosecutrix, and were referred to the apartment manager. The apartment manager advised that defendant's brother might fit the description given and that he resided in an apartment on the garden level.
The officers then went to the defendant's apartment and knocked on the door. There was no answer. The officers therefore *270 obtained a pass key from the manager. When the officers returned, they knocked once again rather than using the key, and this time the door was opened by the defendant's brother.
The testimony of the investigating officers and the defendant and his brother is in conflict as to what transpired thereafter. The officers testified that the brother was advised that they were investigating a rape that had occurred nearby and wished to enter and search for hiking boots that made the tracks in the snow. According to the officers, the brother and subsequently the defendant gave permission to enter the apartment and search. During the course of a search of the bedroom, the defendant inquired whether the officers had a search warrant. One of the officers replied in the negative and inquired whether defendant felt they should obtain a search warrant, whereupon defendant replied in the negative.
The defendant and his brother testified that when the brother opened the door, the officers pushed past him into the interior of the apartment as one officer explained that they were investigating a rape. Once inside, the officers proceeded with their search of the bedroom, and neither the defendant nor his brother consented to the search. While one of the officers was in the bedroom, defendant inquired whether the officers had a search warrant and understood from the officer's response that a warrant was not required. According to the defendant, he raised no further objections because he felt that such would be futile. Both defendant and his brother testified that they did not consent to either entry into the apartment or the subsequent search. There was no direct evidence whether the officers were seeking to determine if any hiking boots owned by either of the occupants were wet or that they were searching for any weapon used in the commission of the offense.
In any event, as a result of the search, the officers seized a pair of hiking boots with a sole similar to that which made the footprints in the snow as well as some denim pants belonging to the defendant. The hiking boots were wet, as were the cuffs of the pants.
On the basis of this discovery, the officers asked if both brothers would accompany them to the station for interrogation. According to the officers, both the defendant and his brother agreed, whereupon they were handcuffed and transported in separate vehicles to the station. Following interrogation at the station, the officers stated that defendant was placed under arrest.
The court concluded that the search by the officers was justified by "exigent circumstances," namely, that the wetness of the boots was highly probative evidence pertinent to the investigation by the officers and that the "presumption that a search warrant could be obtained before that evidence dissipated would be almost preposterous." Accordingly, the trial court concluded that the warrantless search was permissible and that the hiking boots were admissible in evidence. The propriety of this ruling is the only question before us, since the trial court, by clear implication, determined that neither the defendant nor his brother consented to the search, see People v. Neyra, Colo., 540 P.2d 1077, and trial counsel for defendant conceded at the suppression hearing that the People "had adequate ground for a search warrant," thus removing the issue of probable cause to search.
In some cases a warrantless search of a residence has been judicially approved where it appears to the officers that evidence may be removed or destroyed through the efforts of the suspect or someone acting on his behalf before a warrant can be obtained. See, e. g., United States v. Rubin, 474 F.2d 262 (3rd Cir.); see also People v. Neyra, supra; People v. Duleff, 183 Colo. 213, 515 P.2d 1239; People v. Railey, 178 Colo. 297, 496 P.2d 1047. Defendant's appellate counsel contends, in effect, that the "exigent circumstances" doctrine does not apply because there was *271 no showing that defendant or his brother were in the process of or would have destroyed or removed the boots in question. Alternatively, counsel points out that no evidence was offered to indicate the length of time required to obtain a search warrant in order to demonstrate that the boots would be dry before that time, and that, in any event, the boots were dry when offered as evidence at the trial.
As to the alternative assertion, the trial court was in the best position to assess the time required to obtain a search warrant in that judicial district in view of the hour the crime was committed and to take judicial notice thereof, and we are in no position to overturn that determination here. Further, the fact that the boots were dry when offered in evidence is not relevant to the issue of whether the officers were constitutionally permitted to search for this evidence in their investigation in order to determine its physical condition at a time shortly after the crime was committed.
As to the first contention, in Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409, while the Supreme Court admonished that "only in `a few specifically established and well delineated' situations. . . may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it," citing Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, the Court indicated in dictum that one of the "well delineated situations" would exist when the evidence seized by the officers was "in the process of destruction." In Schmerber the Court upheld a police officer's order to hospital authorities to draw a blood sample from a defendant arrested for driving under the influence on the basis that the evidence would likely disappear during the period of delay necessary to obtain a search warrant since the percentage of alcohol in the blood diminishes after consumption thereof ceases. Then, in Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570, (decided after defendant's brief was filed in the present appeal), the Court decreed that a state may not impose "greater restrictions as a matter of federal constitutional law when this Court specifically refrains from imposing them." (emphasis supplied) In view of the Court's pronouncement in Oregon v. Hass, supra, and in view of the Court's analysis of the exceptions to the warrant requirement in Vale, we must necessarily conclude that the Court has refrained from limiting the "exigent circumstances" doctrine to recovery of evidence that may be lost or destroyed through efforts of the suspect or someone on his behalf.
Nor do we find any basis in other recent decisions of the Supreme Court decided since Vale for concluding that exceptions to the warrant requirement are to receive a strict interpretation at present. See, e. g., United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456; United States v. Calandra, 414 U.S. 388, 94 S.Ct. 613, 38 L.Ed. 2d 561. Rather, we believe that the test in a given case now is actually one of the reasonableness of the officer's conduct in relation to the circumstances as they appear at the time the search is conducted. Cf. United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771. Accordingly, where, as here: (1) The officers have probable cause to conduct a search; and (2) at the time probable cause appears, the circumstances confronting the officers are such that it reasonably appears that the physical condition of evidence having probative value will not be ascertainable if the investigation is delayed in order to obtain a search warrant, then a warrantless search and seizure are permissible. Likewise, testimony as to the observed state of evidence discovered in that search is admissible.
In our jurisdiction, the "exigent circumstances" doctrine has been approved and held to authorize a warrantless search when it reasonably appears that evidence may be removed or destroyed. See, e. g., People v. Mathis, Colo., 542 P.2d 1296 *272 (1975); People v. Neyra, supra; People v. Duleff, supra; People v. Railey, supra. See also People v. Moreno, 176 Colo. 488, 491 P.2d 575; People v. Vaughns, 175 Colo. 369, 489 P.2d 591. We hold that the Colorado Constitution does not require a stricter application of the exigent circumstances doctrine than does the United States Constitution. Hence, we affirm the trial court's ruling in this case.

II. Photo Identification
Defendant contends that the circumstances surrounding the pre-trial photo identification of him by the prosecutrix were "so unnecessarily suggestive" that the trial court should not have allowed her to make an in-court identification of defendant during the trial. We disagree.
In an in camera hearing held by the trial court on this issue, an officer testified that on the day following the commission of the crime, he interviewed the prosecutrix at her residence and showed her five photographs. Each of the photographs was taken by the police department in conjunction with "booking" various suspects, and in the right-hand corner of each photograph the date appeared upon which the photograph was taken. However, these dates were totally or partially obscured on some of the photographs by material glued to the right-hand corner of each photograph. The prosecutrix examined each of the photographs over a period of a few minutes, eliminated three, compared two, and then indicated to the officer that the photograph of the defendant was a photograph of her assailant.
In making the photo identification, the prosecutrix testified that she relied on her personal observations of her assailant at the time of the crime. The prosecutrix also indicated that in conjunction with the review of the photographs, she had not noticed the dates on each photograph and in no way relied thereon. Similarly, in making the in-court identification, the prosecutrix testified that she was relying on her personal observations of her assailant. Accordingly, since the record supports the trial court's finding that the prosecutrix did not rely on any dates on the photographs in identifying the defendant, and since it further appears from the record that the prosecutrix relied upon a source for the in-court identification separate and apart from the photographs, we find no error in the trial court's ruling on this issue. See People v. Sanchez, Colo., 520 P.2d 751; see also People v. Simms, Colo., 523 P.2d 463.

III. People's Rebuttal Testimony
Defendant contends that the trial court erred in admitting expert testimony of a doctor offered by the People in rebuttal of character witnesses called by defendant. We disagree.
During presentation of his case, defendant called two counselors who supervised and became closely acquainted with defendant during his three years in high school. Both the counselors testified to the effect that defendant was a truthful and sincere individual, a cooperative and dedicated student, respectful, and of generally outstanding character. One of the witnesses indicated that the defendant had normal social relationships with the women students in the school as well as the women instructors.
The People then called a medical doctor who had resided in the community for approximately 60 days. The doctor was licensed in both the states of Nebraska and Colorado as a doctor of medicine and had completed his formal training in the field of psychiatry. The court determined that the doctor was qualified to testify as an expert and express his opinion.
Hypothetical questions which set forth the prior testimony as to the defendant's character were posed to the doctor, and then the doctor was asked to give an opinion whether an individual of that character could commit a violent rape. The doctor responded in the affirmative. The doctor was then asked whether rapists had any *273 common characteristics and he answered "no."
In responses to questions from the court and defense counsel, the doctor stated that his opinion was based upon research in the field and his personal experience which had disclosed no "predictors" between the type of character possessed by an individual and the propensity of that individual to commit violent acts.
Defendant first contends that the trial court erred in admitting the doctor's testimony arguing that the only proper rebuttal evidence under the circumstances of this case was evidence of defendant's "bad character." We disagree.
The obvious purpose in eliciting testimony to show defendant's good character was to raise the inference that he would not commit a violent rape. The doctor's testimony merely tended to rebut that inference by showing that in the doctor's opinion there was no correlation between an individual's character and his propensity to commit violent acts. Since it is proper for the People to present testimony of bad character in response to evidence of good character offered by the defendant, see Martin v. People, 114 Colo. 120, 162 P. 2d 597, we conclude it is also proper to offer testimony to rebut the inferences to be derived from defendant's character evidence.
We have examined defendant's other contentions relative to the admission of the doctor's testimony and find them to be without merit.

IV. Instructions
Defendant contends that the trial court erred in refusing his tendered instruction regarding the People's failure to call a witness. We disagree.
In addition to the hiking boots removed from defendant's apartment during the initial investigation in this case, other items of clothing were seized thereafter and forwarded to the Colorado Bureau of Investigation for testing. The People did not call any witnesses relative to whether tests were conducted on these other items and the results thereof, if any.
Relying on cases such as Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, defendant requested an instruction which advised the jury to the effect that if they found the People had failed to call an available witness who had knowledge of facts not testified to by others, then the jury could presume that the testimony of the "uncalled witness" would have been unfavorable to the People. Assuming, without deciding, that the instruction correctly stated the law, the trial court properly refused it since there was no evidence showing that any tests were ever conducted on these items, and thus no basis to support a conclusion that the People failed to call any witness relative thereto. See People v. Trujillo, Colo., 527 P.2d 52.
We have considered defendant's other contentions and find them to be without merit.
Judgment affirmed.
SMITH and KELLY, JJ., concur.