**Edgar MENDEZ, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 98SC66.**

Supreme Court of Colorado, En Banc.

Sept. 20, 1999.

Rehearing Denied Oct. 18, 1999.*

* Justice Hobbs would grant the petition.

David F. Vela, Colorado State Public Defender

Andrew C. Heher, Deputy State Public Defender, Denver, Colorado,Attorneys for Petitioner.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Assistant Solicitor General, Laurie A. Booras, Assistant Attorney General, Appellant Division, Denver, Colorado,Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

We granted certiorari in order to review *People v. Mendez*, 948 P.2d 105 (Colo.App. 1997), in which the court of appeals affirmed the trial court's denial of the defendant's motion to suppress evidence. Defendant argues that evidence seized as a result of a warrantless search of his motel room was taken in violation of his constitutional rights and should have been suppressed at his trial on charges of possession of cocaine and marijuana. We conclude that in seizing the evidence in question, the police acted in conformity with the exigent circumstances exception to the warrant requirement. Accordingly, we affirm the judgment of the court of appeals.

## I. FACTS

The evidence taken at the suppression hearing established the following facts. At approximately midnight on March 23, 1995, Denver police officers Edwin Morales and Ryan Kasperson were called to a local motel in order to investigate a complaint that an unregistered guest was trespassing in one of the rooms on the second floor of the motel. Upon arriving at the motel, Officer Morales and his partner learned that two other officers had already arrived and were in the process of issuing a summons to the alleged trespasser. The officers on the scene, however, were missing a necessary form, so Officer Morales volunteered to go back to his police car in order to retrieve it.

While Officer Morales was waiting for the elevator, he smelled the "strong odor of burning marijuana" emanating from under the door of room 209, which was directly across from the elevator. Officer Morales testified that he had received extensive training in identifying the odor of burning marijuana during his sixteen years on the police force. Officer Morales summoned Officer Kasperson over to the door and asked him to verify his suspicion that there was marijuana burning in the room. Officer Kasperson agreed with Officer Morales' initial assessment. Officer Morales then asked the motel manager, who was down the hall speaking to the other officers regarding the trespassing complaint, to come over to room 209. Fearing that the occupant of the room had heard the police activity in the hallway and would attempt to flush evidence of the drug use down the motel room toilet, Officer Morales asked the motel manager to open the door with his master key. The manager complied and Officer Morales entered the room.

When Officer Morales entered the room, he observed the defendant, Edgar Mendez, running into the motel room bathroom. He then heard the toilet flushing. He also saw a baggie of what appeared to be marijuana and a few syringes on the dresser. Officer Morales escorted Mendez out of the room and placed him under arrest. A subsequent inventory search conducted at the police station revealed a bag of cocaine in Mendez's pants pocket. Mendez was subsequently charged with possession of cocaine and marijuana.

Prior to his trial, Mendez moved to suppress all evidence derived as a result of the warrantless entry into his motel room on the grounds that the search violated his rights under the United States and Colorado Constitutions. At the close of the suppression hearing, the trial court denied Mendez's motion, holding that Officer Morales' entry into the motel room was lawful. Specifically, the court found credible Officer Morales' testimony that he had smelled the distinct and strong odor of burning marijuana coming from under the door of room 209. The court went on to conclude that, given Officer Morales' experience in identifying the odor of burning marijuana, the smell "entitled [him] to enter the room [and,] given the exigent circumstances, [it was] necessary to secure the premises before the drugs were either used and/or consumed." The court also noted two other factors in support of its holding that the circumstances surrounding the entry were exigent; namely that Mendez may have been alerted to the presence of multiple police officers in the hallway and that the motel was a "transient apartment living place" where Mendez could check out and leave before the officers could have time to obtain a search warrant. Accordingly, the court held that the evidence seized in plain view in the motel room and during the inventory

search at the police station was admissible at Mendez's trial.

After a trial to a jury, Mendez was convicted of both counts of possession of a controlled substance. He appealed the conviction, claiming that the trial court erred in denying his motion to suppress. The court of appeals affirmed the trial court, holding that the requisite probable cause and exigent circumstances existed to justify a warrantless entry into Mendez's motel room. This appeal followed.

## II. ANALYSIS

▇▇▇ The Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution proscribe all unreasonable searches and seizures.[1] Under these provisions, a warrantless search is invalid unless it is supported by probable cause and is justified under one of the narrowly defined exceptions to the warrant requirement. *See People v. Garcia,* 752 P.2d 570, 581 (Colo.1988). One such exception applies when exigent circumstances exist that necessitate immediate police action. *See People v. Kluhsman,* 980 P.2d 529, 534 (Colo. 1999); *see also People v. McKinstry,* 843 P.2d 18, 19–20 (Colo.1995); *People v. Malczewski,* 744 P.2d 62, 66 (Colo.1987). We have invoked the exigent circumstances exception

in the following three situations: (1) the bona fide "hot pursuit" of a fleeing suspect; (2) the risk of immediate destruction of evidence; or (3) a colorable claim of an emergency which threatens the life or safety of another. *See Kluhsman,* 980 P.2d at 534; *People v. Higbee,* 802 P.2d 1085, 1088 (Colo.1990). In these three circumstances, evidence discovered in the course of a warrantless search is admissible if the prosecution establishes both probable cause to support the search and exigent circumstances justifying the unauthorized entry. *See Kluhsman,* 980 P.2d at 534; *see also People v. Crawford,* 891 P.2d 255, 258 (Colo.1995). Finally, the scope of the intrusion must be strictly circumscribed by the exigency justifying the initiation of the warrantless intrusion. *See People v. Wright,* 804 P.2d 866, 869 (Colo.1991).[2]

▇▇▇ While the prosecution in the instant case concedes that Officer Morales entered Mr. Mendez's motel room without a search warrant, the state argues that this search falls within the exigent circumstances exception to the warrant requirement.[3] Therefore, the prosecution argues that the marijuana seen in plain view on the motel dresser and the cocaine found in Mendez's pocket during the inventory search following his arrest were the products of a legal entry and search. Conversely, Mendez argues that nei-

1. The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Article II, section 7 of the Colorado Constitution provides:

The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

COLO. CONST. art. II, § 7.

2. As with other exceptions to the warrant requirement, the exigent circumstances exception may combine with the plain view doctrine to

justify a warrantless search and seizure. *See Kluhsman,* 980 P.2d at 535. Likewise, evidence seized during a valid inventory search is admissible against a defendant at trial. *See, e.g., People v. Salaz,* 953 P.2d 1275 (Colo.1998). In the instant case, Mendez challenges neither the applicability of the plain view doctrine to Officer Morales' sighting of the marijuana in the motel room nor the propriety of the inventory search performed at the police station. For this reason, we limit our review to the issue of whether the exigency of the circumstances excused the warrantless entry into Mendez's motel room.

3. As it is well-established that the renter of a motel room has a legitimate expectation of privacy in both the room and its contents during the period for which the room is rented, the prosecution does not dispute that Mendez was entitled to the protections of the Fourth Amendment and article II, section 7 of the Colorado Constitution while residing in the motel room. *See, e.g., Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *People v. Lewis,* 975 P.2d 160, 169 (Colo.1999); *People v. Schafer,* 946 P.2d 938, 941 (Colo.1997).

ther the requisite probable cause nor exigent circumstances existed to justify Officer Morales' warrantless entry into his motel room.

■ Our task, then, is to determine whether the legal prerequisites of probable cause and exigent circumstances existed prior to Officer Morales' entry into the motel room. In conducting our appellate review, we give deference to the trial court's findings of fact and will not overturn them so long as they are supported by competent evidence in the record. *See People v. Raffaelli*, 647 P.2d 230, 236 (Colo.1982). However, an ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings is subject to correction by a reviewing court. *See People v. Quezada*, 731 P.2d 730, 732–33 (Colo.1987).

■ When the controlling facts are undisputed, the legal effect of those facts constitutes a question of law which is subject to *de novo* review. *See People v. D.F.*, 933 P.2d 9, 14 (Colo.1997); *Lakeview Assocs. v. Maes*, 907 P.2d 580, 583–84 (Colo.1995). Furthermore, in our review we are bound to rely only upon facts that Officer Morales knew prior to his warrantless entry of Mendez's motel room. *See People v. Miller*, 773 P.2d 1053, 1057 (Colo.1989). Finally, the prosecution bears the burden of showing that probable cause and exigent circumstances existed to justify the warrantless entry. *See id.*

### A. PROBABLE CAUSE

■ Although the constitutional requirement of a warrant can be excused under exigent circumstances, the probable cause requirements are "at least as strict in warrantless searches as in those [executed] pursuant to a warrant." *See People v. Thompson*, 185 Colo. 208, 210, 523 P.2d 128, 131 (Colo.1974). Accordingly, we begin our review of the constitutionality of this search by examining whether Officer Morales had probable cause to enter Mendez's motel room.

■ In the case of a search, probable cause requires police to establish that reasonable grounds existed to believe that contraband or evidence of criminal activity is located in the area to be searched. *See*

*People v. Melgosa*, 753 P.2d 221, 225 (Colo. 1988). The analysis of probable cause under both the state and federal constitutions requires us to look at the totality of the circumstances. *See People v. Turcotte–Schaeffer*, 843 P.2d 658, 660 (Colo.1993). The probable cause standard does not lend itself to mathematical certainties and should not be laden with hypertechnical interpretations or rigid legal rules. *See People v. Altman*, 960 P.2d 1164, 1167 (Colo.1998). Rather, judges, considering all of the circumstances, must make a practical, common sense decision whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime. *See id.; see also Higbee*, 802 P.2d at 1088 (Colo.1990).

■ Finally, the information necessary to support a finding of probable cause need not rise to the level of certainty. *See People v. Drake*, 785 P.2d 1257, 1263 (Colo.1990). Instead, a finding of probable cause is based on factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act. *See People v. Bustam*, 641 P.2d 968, 972 (Colo.1982).

In the instant case, we agree with the court of appeals' conclusion that Officer Morales had probable cause to believe that contraband or evidence of criminal activity existed inside Mendez's motel room.

We have previously held that the smell of burning marijuana may give an officer probable cause to search or arrest. *See People v. Baker*, 813 P.2d 331, 333 (Colo.1991). In *Baker*, police officers effected a valid warrantless entry of the defendant's home based upon probable cause and exigent circumstances. After knocking on the defendant's door for the purpose of investigating an outstanding arrest warrant, police were greeted by the defendant. The officers smelled the pungent odor of burning marijuana emanating from inside the house. The defendant attempted to warn someone else in the house that the police were at the door, then attempted to shut the door. The police then entered the home and discovered evidence of drug possession and use. *See Baker*, 813 P.2d at 332. We held that under those circumstances, "the officers had probable cause

to believe a crime was being committed when they smelled burned marijuana." *Id.* at 333; *see also People v. Stephenson,* 187 Colo. 94, 96, 529 P.2d 1333, 1334 (1975) (holding that officer had probable cause to arrest defendant after smelling burning marijuana emanating from the defendant's hand-rolled cigarette). We now take this opportunity to reaffirm our holding in *Baker.*

The origins of the use of smell to support a finding of probable cause to search can be traced to *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In *Johnson,* police conducted a warrantless search of the defendant's hotel room after detecting the smell of burning opium in the hallway outside the room. While the Court ultimately concluded that no exigent circumstances existed in that case to justify excusing the warrant requirement, the Court was careful to point out:

> [i]f the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. *Indeed it might very well be found to be evidence of most persuasive character.*

*Johnson,* 333 U.S. at 13, 68 S.Ct. 367 (emphasis added). Since the *Johnson* decision, numerous courts have held that probable cause to search exists when a trained officer detects the distinctive odor of marijuana emanating from a particular place. *See United States v. Nicholson,* 17 F.3d 1294, 1297 (10th Cir.1994); *United States v. Thomas,* 12 F.3d 1350, 1366 (5th Cir.1994); *United States v. Garza,* 10 F.3d 1241, 1246 (6th Cir.1993); *United States v. Tobin,* 923 F.2d 1506, 1510 (11th Cir.1991); *United States v. Kerr,* 876

F.2d 1440, 1445 (9th Cir.1989); *see also* 2 Wayne R. LaFave, *Search and Seizure* § 3.6(b) (3d ed.1996). Likewise, we find that common sense dictates that the smell of burning marijuana gives rise to a very high probability that the search of a particular place will reveal contraband or evidence of a crime.[4]

In holding that probable cause existed in this case, we emphasize that the smell of burning marijuana is sufficiently distinctive as to be readily identifiable to a trained police officer. *See, e.g., United States v. Nielsen,* 9 F.3d 1487, 1491 (10th Cir.1993); *United States v. DeLeon,* 979 F.2d 761, 764–65 (9th Cir.1992); *People v. Titus,* 880 P.2d 148, 156 (Colo.1994) (Mullarkey, J., dissenting). Furthermore, we note that Officer Morales' testimony at the suppression hearing reflects the fact that he has received extensive training in detecting the smell of burning marijuana from both the Denver Police Department and the Drug Enforcement Agency. Given these circumstances, we conclude that Officer Morales had probable cause to believe a crime was being committed within Mendez's motel room.

## B. EXIGENT CIRCUMSTANCES

There are three situations in which exigent circumstances can justify a warrantless search: (1) when police are engaged in the "hot pursuit" of a fleeing suspect; (2) when there is a risk of immediate destruction of evidence; or (3) when there is a colorable claim of emergency threatening the life or safety of another. *See Kluhsman,* 980 P.2d at 534; *see also Miller,* 773 P.2d at 1057. The only exception relevant to this case is

---

4. In so holding, we reject the defendant's contention that the fact that the medicinal use of marijuana provides an affirmative defense to the charge of possession precludes a finding of probable cause under these circumstances. Specifically, the defendant asserts that the fact that Officer Morales could not readily determine whether the marijuana was being used illegally or for medicinal purposes demonstrates that the search was based on a mere suspicion of criminally culpable conduct, as opposed to probable cause. However, we find this argument unpersuasive, as it would swallow the rule mandating

that absolute certainty is not required before probable cause can be established. In fact, the Constitution has never required an officer to refrain from searching premises under circumstances in which the activity in question could *potentially* be legal. *See United States v. Naugle,* 997 F.2d 819, 823 (10th Cir.1993)(holding that police had probable cause to seize a shotgun with a barrel under eighteen inches even though possession of the gun would be legal if it was later proven to be registered because "no officer can tell upon first sight whether a weapon is properly registered").

number two above, that is whether there was a risk of immediate destruction of evidence.

In order to satisfy this exception to the warrant requirement, the police must have an articulable basis upon which to justify a reasonable belief that evidence is about to be destroyed. *See Miller*, 773 P.2d at 1057; *People v. Turner*, 660 P.2d 1284, 1287–88 (Colo.1983), *disapproved on other grounds by People v. Schoondermark*, 759 P.2d 715, 719 (Colo.1988). In essence, "the question is whether there is a real or substantial likelihood that the contraband or known evidence on the premises might be removed or destroyed before a warrant could be obtained." *Turner*, 660 P.2d at 1288. Furthermore, this perceived danger must be real and immediate. *See People v. Crawford*, 891 P.2d 255, 258 (Colo.1995). The mere fact that evidence is of a type that can be easily destroyed does not, in itself, constitute an exigent circumstance. *See id.*

In the instant case, Officer Morales smelled the distinct odor of burning marijuana emanating from Mendez's room. This odor indicated that evidence of a crime, that is, possession of marijuana, was in the process of being burned and thereby destroyed. As such, we conclude that there was a very real and substantial likelihood that contraband would continue to be destroyed before a warrant could be obtained to search the motel room. This stands in contrast to a circumstance where the police are able to obtain a warrant without risking the destruction or loss of evidence. For instance, when police fear that suspected narcotics may be *removed* from the premises, it does not necessarily follow that exigent circumstances are present. *See* 3 LaFave, *supra*, § 6.5; *see also Turner*, 660 P.2d at 1288. If it is possible for police in such a circumstance to secure the premises and wait for a warrant without risking the loss of evidence, such action is required. *See Vale v. Louisiana*, 399 U.S. 30, 34–35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). However, when, as here, police are faced with a situation where they know that narcotics or other evidence is in the process of being *destroyed*, the risk of the loss of evidence is sufficiently great to justify an immediate warrantless

search and seizure. *See State v. Decker*, 119 Ariz. 195, 580 P.2d 333, 336 (1978) ("[T]here existed a strong probability of imminent destruction of the marijuana. The smell in this case alone indicated the contraband was being destroyed. The delay necessary to obtain a warrant could mean that the marijuana would have been completely destroyed. We find that there is here an exigent circumstance.") (citation omitted); *People v. Clark*, 37 Colo.App. 188, 547 P.2d 267 (1975) (holding that when footprints in snow at scene of very recent rape led to apartment building where defendant lived and defendant was identified as only resident fitting description of the rapist, warrantless entry of the home and search for the boots was proper, as fact that boots were then wet would be highly probative evidence in need of preservation). Given the immediate necessity of police action to preserve the evidence in question, we conclude that exigent circumstances existed here.

Furthermore, we find it persuasive that Officer Morales was on the premises to investigate an unrelated complaint when he inadvertently encountered the smell of burning marijuana. There was no evidence to suggest that Officer Morales made a deliberate decision to go to the motel in order to gather evidence of drug use. *See* 3 LaFave, *supra*, § 6.1. As such, the exigencies arising in this case were not foreseeable and a warrant could not have readily been obtained.

Finally, we reject Mendez's argument that the United States Supreme Court's decision in *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), militates against the use of exigent circumstances to excuse the warrant requirement in this case. In *Welsh*, a witness observed the defendant driving erratically, swerving off the road, and then abandoning his car to walk home. When police arrived at the scene, the witness explained that the defendant had either been very inebriated or very sick. After determining the defendant's identity from his automobile registration, the police decided to go to his home. Without securing a warrant, the police proceeded to the home and gained entry. Police found the defendant asleep in bed and placed him under arrest.

The defendant filed a motion to dismiss the complaint, claiming that his arrest was unconstitutional. The defendant challenged the constitutionality of his arrest, arguing that no exigent circumstances existed to justify the warrantless entry into his home. The U.S. Supreme Court agreed with the defendant's contention, holding:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate *when the underlying offense for which there is probable cause to arrest is relatively minor.* ... When the government's interest is only to arrest for a minor offense, [the presumption that warrantless searches are unreasonable] is difficult to rebut, and the government *usually* should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Id.* at 750, 104 S.Ct. 2091 (emphasis added). The Court further held that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense.... [A]pplication of the exigent-circumstances exception ... should rarely be sanctioned when there is probable cause to believe that only a minor offense" has been committed. *Id.* at 753, 104 S.Ct. 2091.

While we are mindful of the *Welsh* requirement that the gravity of the underlying offense must be considered in evaluating the exigency of the circumstances, we emphasize that the facts in the case at bar differ significantly than those in *Welsh.* Most importantly, the police officers in *Welsh* were fully aware that the defendant had only committed a minor, civil, nonjailable offense. This stands in contrast to the instant case, where-

in Officer Morales could not infer from the smell of burning marijuana whether the amount of marijuana in the room was enough to lead to a misdemeanor or felony possession charge. We note further that Officer Morales could not infer from the smell of burning marijuana whether the person possessing the marijuana had a prior marijuana conviction. The Uniform Controlled Substances Act of 1992 uses both of these factors to classify the offense as either a petty offense, a misdemeanor, or a felony.[5] The only information available to Officer Morales based upon the smell in the hallway was that there was an undetermined amount of marijuana in room 209 being possessed by an unknown person, and that the contraband in question was in the process of being destroyed. Therefore, the potential gravity of the offense at issue in the instant case was much greater than that in *Welsh.*[6]

Therefore, we conclude that the exigent circumstances with which Officer Morales was presented were sufficient to justify his warrantless entry of Mendez's motel room.

### III. CONCLUSION

We conclude that the initial entry into the defendant's motel room was lawful. Therefore, we hold that the seizure of the evidence found in plain view in the room and that discovered during the inventory search of the defendant at the police station was also proper. Accordingly, we affirm the judgment of the court of appeals.

Justice HOBBS dissents.

Justice HOBBS, Dissenting:

I respectfully dissent. In my view, the Fourth Amendment's guarantee against warrantless searches and seizures should compel

---

5. The Act provides:

(1) any person who possesses not more than one ounce of marihuana commits a class two petty offense .... (4)(a) any person who possesses more than one ounce of marihuana but less than eight ounces of marihuana commits: (I) a class one misdemeanor; or (II) a class five felony if the violation is committed subsequent to a prior conviction for a violation to which this subsection (4) applies. (b) any person who possesses eight ounces or more of marihuana ... commits: (I) a class five felony;

or (II) a class four felony, if the violation is committed subsequent to a prior conviction for a violation to which this subsection (4) applies. § 18–18–406, 6 C.R.S. (1999).

6. Furthermore, *Welsh* is distinguishable in that it involved a planned entry and arrest. As discussed above, this factor, which necessarily detracts from an officer's attempt to demonstrate that an urgent need existed to enter the premises, is not present in the instant case.

a holding quite different from that of the majority. We are dealing here with a warrantless, non-consensual entry into a motel room when the police only had probable cause to believe that a non-jailable class two petty offense, possession of less than one ounce of marijuana, was taking place. The legislature has provided that punishment for this offense shall not exceed a $100 fine. *See* § 18–18–406(1), 6 C.R.S. (1999).

The trial court found, pursuant to *People v. Bland,* 884 P.2d 312, 316 (Colo.1994), that the marijuana offense was chargeable "pursuant to a summons and complaint and noncustodial arrest." Nevertheless, it validated a midnight warrantless entry into a person's abode to arrest him and secure evidence of this offense. In my view, *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), and *People v. Miller,* 773 P.2d 1053 (Colo.1989), control this case and require us to reverse the judgment of the court of appeals.

I.

### The Fourth Amendment and Minor Offenses

A person residing in a motel room has the same expectation of privacy as in a home. *See People v. Schafer,* 946 P.2d 938, 944 (Colo.1997) ("Visitors and residents of Colorado who choose to stay in a hotel room, cabin, or tent away from their permanent abode presumptively enjoy Fourth Amendment protection.") A search of any abode, including a motel room, without a warrant is presumptively· unreasonable. *See People v. O'Hearn,* 931 P.2d 1168, 1173 (Colo.1997).

It is well established that the prosecution must show both probable cause and exigent circumstances to justify a warrantless search of an abode. *See, e.g., People v. Lewis,* 975 P.2d 160, 166–67 (Colo.1999). Our cases recognize three categories of exigent circumstances: (1) "hot pursuit" of a fleeing suspect; (2) a risk of immediate destruction of

evidence; and (3) a colorable claim of emergency threatening the life or safety of another. *See, e.g., Lewis,* 975 P.2d at 168. The majority holds here that a threat of destruction of evidence authorized the police to make a non-consensual entry into the room.

In my view, the three categories of exigent circumstances listed above begin the analysis, but they do not end it in cases such as the one before us. Here, we must also employ factors we previously identified as applicable to a totality of the circumstances review in Fourth Amendment cases. The majority fails to do that.

### A. Gravity of the Offense in Probable Cause and Exigent Circumstances Analysis

Both *Welsh* and *Miller* require courts to weigh the gravity of the suspected offense in evaluating the validity of a warrantless entry, search, or seizure. *See Welsh,* 466 U.S. at 750–53, 104 S.Ct. 2091; *Miller,* 773 P.2d at 1057. As the majority observes, *Welsh* involved a warrantless entry at night into the home of a drunken driving suspect. The police officers in that case were concerned that delay associated with obtaining a warrant would allow the level of alcohol in Welsh's blood to dissipate, essentially destroying the evidence of Welsh's offense. The Court in *Welsh* assumed the reality of this risk for purposes of decision, but nevertheless found that the intrusion on the defendant's reasonable expectation of privacy and his person, for the purpose of preserving evidence and taking him into custody, was unreasonable in light of the minor nature of the offense. *See* 466 U.S. at 754, 104 S.Ct. 2091.

Both *Welsh* and *Miller* drew upon *Dorman v. United States,* 435 F.2d 385 (D.C.Cir.1970) (en banc), for their analysis.[1] The court in *Dorman* listed a number of factors to be considered in evaluating whether exigent circumstances authorize a warrantless entry.

---

1. To be clear, *Welsh* and *Miller* do not provide identical rules of law. *Welsh* places greater emphasis on the gravity of the offense than does *Miller,* though *Miller* does place it first among a number of factors to be considered in evaluating the validity of a warrantless search. The court in

*Miller* adopted the *Dorman* factors wholesale, while the Court in *Welsh,* "[w]ithout approving all of the factors," appears to have elevated the "gravity of the offense" factor by focusing singularly on it. *Welsh,* 466 U.S. at 752, 104 S.Ct. 2091.

Our totality of the circumstances analysis under *Miller* follows *Dorman* in considering gravity of the offense as the first among seven relating to the validity of a warrantless entry, search, or seizure.

The six pertinent considerations outlined in *Dorman* are that (1) a grave offense is involved, particularly a crime of violence; (2) the suspect is reasonably believed to be armed; (3) there exists a clear showing of probable cause to believe that the suspect committed the crime; (4) there is a strong reason to believe that the suspect is in the premises being entered; (5) the likelihood exists that the suspect will escape if not swiftly apprehended; and (6) the entry is made peaceably. One additional factor is whether the warrantless entry is made at night.

*Miller*, 773 P.2d at 1057. These factors have garnered a substantial following in both federal and state courts. *See* 3 Wayne R. La-Fave, *Search and Seizure*, § 6.1(f), at 266 (3d ed.1996) (collecting cases).

In addition, Professor LaFave has observed that, "[o]ne factor which did not make the *Dorman* list but which is often of significance in this context concerns the preservation of evidence.... [I]t makes great sense to recognize that frequently an immediate entry to arrest is necessitated so that the defendant can be disabled from destroying or distributing evidence." *See* LaFave, *supra*, § 6.1(f), at 274. Thus, the seven factors we identified in *Miller* can reasonably be supplemented by an eighth factor, namely whether immediate entry to arrest is necessitated so that the defendant can be disabled from destroying evidence.

Under the *Miller* totality of the circumstances test,[2] which applies when the police urge that there was a need that " 'could not brook the delay incident to obtaining a war-rant,' " *Miller*, 773 P.2d at 1057 (quoting *Dorman*, 435 F.2d at 392), all of the factors must be weighed. The trial court and we must determine, under the facts of the case, whether the prosecution has sustained its burden of proof that the warrantless entry, search, and seizure of the evidence and the defendant's person was reasonable. *Miller*'s first factor requires us to decide whether "a grave offense is involved." In doing so, we do not look at what the police actually found after entering the room and searching Mendez; rather, we look to what the police officers could have reasonably believed the offense to be. This is an objective test, not one which indulges the suspicion and speculation of the officers.[3]

### B. Probable Cause in this Case

The operative facts of this case are these: the officers smelled marijuana being burned and, therefore, had probable cause to believe that a person within the motel room was committing an offense for which the legislature had prescribed a mandatory notice and summons procedure as to which custodial arrest was prohibited, i.e., section 18–18–406(1) & (2).[4] The police were in possession of no other information that would tend to show that Mendez possessed or was using drugs of a type or quantity that would trigger a jailable offense.

"Application of the exigent circumstances exception in the context of a home entry," said the Court in *Welsh*, "should rarely be sanctioned *when there is probable cause to believe that only a minor offense ... has been committed.*" *Welsh*, 466 U.S. at 753, 104 S.Ct. 2091 (emphasis added). Unless we are to read *Welsh* and *Miller* out of Fourth Amendment jurisprudence, we must take into account the gravity of the offense that

---

**2.** The majority cites *Miller* but fails to employ its factors in deciding this case.

**3.** The Fourth Amendment analysis must focus on what the police knew at the time of entry. *See Miller*, 773 P.2d at 1057 (citing *People v. Jansen*, 713 P.2d 907, 911 (Colo.1986)). Here the police lacked even the "specific and articulable facts" required to uphold a finding of reasonable suspicion that more than a minor offense was taking place, much less to meet the more demanding

standard of probable cause. *See, e.g., People v. Canton*, 951 P.2d 907, 910 (Colo.1998). Evidence of criminal activity generated during a warrantless entry may not be used post-hoc to ratify an intrusion; a contrary rule would throw open the door to "fishing expeditions" by police.

**4.** Like the majority, I reject Petitioner's contention that the legality of marijuana use for medical reasons negated probable cause in this case.

the police officers had probable cause to suspect under the circumstances known to them.[5] Unfortunately, the trial court and the majority, in my view, permit the police officers here — and others in similar circumstances — to indulge in the speculation and suspicion that a greater drug offense was being committed and that evidence of that offense might be destroyed. The majority states, for instance, that the "potential" gravity of the offense here was greater than that in *Welsh*. *See* maj. op. at 283. This approach effectively reverses the burdens imposed by the Fourth Amendment. It permits the prosecution to meet its burden other than through the facts objectively known to the police, contrary to the Fourth Amendment:

> Once the defendant has presented evidence that he was arrested without a warrant, the burden shifts to the prosecution. . . . The prosecution must prove two things: that there was probable cause to search, and that exigent circumstances existed to justify the warrantless entry. These two requirements are determined by evaluating the facts known at the time of the warrantless entry and search.

*Miller*, 773 P.2d at 1057 (citing *People v. Jansen*, 713 P.2d 907, 911 (Colo.1985)). In sum, the prosecution bears the burden of establishing that there was probable cause to believe that more than a minor amount of marijuana was present in Room 209. It did not do so here.

Once it is established that the police lacked probable cause to believe that more than a minor amount of marijuana was present in Room 209, the result of this case is clear to me. Our legislature has prescribed a $100 fine for the offense the police officers could have reasonably suspected Mendez of committing. The fact that the legislature authorized only non-custodial arrest, and prescribed a notice and summons procedure by which to initiate prosecution, underscores the legislature's determination that this offense is minor, triggering the application of *Welsh* and *Miller*.

Taking into account this legislative background leads me to conclude that *Welsh* prohibits the very actions the police took here: "the best indication of the State's interest in precipitating an arrest, and . . . one that can be easily identified both by the courts and by officers faced with a decision to arrest" is the penalty attached to the offense. *Welsh*, 466 U.S. at 754, 104 S.Ct. 2091.

A real threat of evidence destruction related to this de minimus possession offense may have existed in this case, depending upon whether Mendez had heard the police radios in the hall and therefore would have been alerted to flush evidence down the toilet.[6] Nonetheless, the issue here, as in *Welsh*, is whether the threat of destruction of evidence

---

**5.** The majority relies on a pre-*Welsh* Arizona Supreme Court case which held that the smell of burning marijuana may justify a warrantless search. As that court's discussion makes clear, however, the offense for which probable cause existed in that case was a felony: "In determining whether there was probable cause to believe that Decker had committed a *felony*, we concern ourselves only with what the officer knew before his entry to make the arrest." *State v. Decker*, 119 Ariz. 195, 580 P.2d 333, 335 (1978). Here, our legislature has made possession of less than one ounce of marijuana a class two petty offense. We should not ignore our legislature's determination that the offense for which the officers had probable cause in this case was minor.

**6.** Although I agree with the majority that there was a potential risk of destruction of evidence in this case, I disagree with their rationale for so concluding. In my view, the risk here was that the defendant would flush evidence down the toilet after hearing the police radios responding to the unrelated trespasser. The majority relies on *State v. Decker*, 580 P.2d at 336, a pre-*Welsh* case, for the proposition that the odor of burning marijuana emanating from Room 209 "indicated that evidence of a crime, that is, possession of marijuana, was in the process of being burned and thereby destroyed." *See* maj. op. at 282. The court in *Decker* offered no analysis in support of this proposition, and no other jurisdiction has followed its holding. The majority then bridges, as justification for dispensing with a warrant, to the conclusion that smoking marijuana thus presents a situation where "the risk of the loss of evidence is sufficiently great to justify an immediate warrantless search and seizure." *See id.* at 282. The majority's rationale and holding would allow an immediate arrest and warrantless search and seizure of an abode whenever police officers detect the smell of burning marijuana, without any additional facts. This holding runs contrary to the Fourth Amendment's warrant requirement.

related to this type of minor, non-jailable offense justified a warrantless entry.

## C. Application of the Miller Factors

Application of the *Miller* factors plainly demonstrates that the prosecution did not meet its burden of sustaining the warrantless entry. First, the officers lacked probable cause to believe that a grave offense was taking place. Second, they had no reason to believe that Mendez was armed. Third, the offense they reasonably believed Mendez to be committing was non-jailable and subject only to a citation process. Fourth, they knew that a person within the room was committing that offense. Fifth, there was no likelihood here that the suspect would escape if not swiftly apprehended; the police had ample personnel to post at the door while one of their number sought a warrant from a judicial officer. Sixth, although the officers conducted themselves in a professional manner, they were operating contrary to the proscriptions of the statute defining and punishing the offense. Seventh, the warrantless entry, search, and seizure occurred at night. Eighth, had the police officers obtained a warrant, evidence of the offense would likely still be present, such as a pouch or packet from which Mendez withdrew the marijuana he was smoking, together with papers or an apparatus he was using, as well as any ash and lingering odor of burned marijuana.

---

**7.** I emphasize that this case is about requiring the authorities to have sought a warrant from an impartial magistrate before entering Mendez's room, not about mandating police to ignore the offense.

Thus, a totality of the circumstances analysis utilizing the *Miller* factors should prompt reversal of the trial court's order that allowed the prosecution to use the fruit of the illegal entry, search, and seizure of Mendez, his room, and his effects.[7] As Justice Jackson observed,

> It is to me a shocking proposition that private homes, even quarters in a tenement, may be indiscriminately invaded at the discretion of any suspicious police officer engaged in following up offenses that involve no violence or threats of it. . . . When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant.

*Welsh,* 466 U.S. 740, 751, 104 S.Ct. 2091, 80 L.Ed.2d 732 (quoting *McDonald v. United States,* 335 U.S. 451, 459–60, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (Jackson, J., concurring)).

## II.

Accordingly, I would reverse the judgment of the court of appeals in this case. I respectfully dissent.